■ Telerep, LLC, et al., Appellants, v U.S. International Media, LLC, et al., Respondents. [903 NYS2d 14]—

Order, Supreme Court, New York County (Charles E. Ramos, J.), entered August 11, 2009, which granted defendants' motion to dismiss the complaint pursuant to CPLR 3211 (a) (7), unanimously reversed, on the law, without costs, the motion denied, and the complaint reinstated.

Plaintiffs are national sales representatives for the sale of commercial advertising spots broadcast on their clients' television stations located throughout the United States. Plaintiffs sell national commercial spots to various media buyers who purchase air time on behalf of their client advertisers; local advertising time is sold by the television stations themselves. Defendants are media buyers.

Plaintiffs entered into 84 contracts with various television stations. These contracts provide that plaintiffs shall act as the

station's "sole and exclusive national sales representative for the sale of all of STATION'S time . . . for advertising purposes, excluding only [local sales] advertising."* The stations agreed that they would not "engage or use the services of any persons, firm or corporation other than [plaintiffs] in the sale of NATIONAL SPOT ADVERTISING."

Plaintiffs brought this action against defendants for tortious interference with contract and unfair trade practices. According to the complaint, defendants embarked on a campaign to induce and pressure the stations to sell national advertising spots directly to them in breach of the stations' obligations under the contracts. Defendants persisted, despite being warned that the stations' direct sales of national spots violated the exclusivity provisions of their contracts with plaintiffs. The complaint alleges that as a result of defendants' interference, the stations breached their contracts with plaintiffs, causing them to lose commissions and goodwill.

To plead a claim for tortious interference with contract, a plaintiff must allege, inter alia, actual breach of a contract between the plaintiff and a third party (*Lama Holding Co. v Smith Barney*, 88 NY2d 413, 424 [1996]). Defendants maintain that the complaint does not allege a breach because the contracts do not bar direct sales of national spots by the television stations themselves but only prohibit sales by competing sales representatives. Plaintiffs, on the other hand, argue that, read as a whole, the contracts prohibit direct sales of national air time by the stations. In the alternative, plaintiffs contend that the contracts are ambiguous.

"A contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion" (*Greenfield v Philles Records*, 98 NY2d 562, 569-570 [2002] [internal quotation marks and citation omitted]). A contract is ambiguous if "on its face [it] is reasonably susceptible of more than one interpretation" (*Chimart Assoc. v Paul*, 66 NY2d 570, 573 [1986]). If the court concludes that a contract is ambiguous, it cannot be construed as a matter of law, and dismissal under CPLR 3211 (a) (7) is not appropriate (*see Hambrecht & Quist Guar. Fin., LLC v El Coronado Holdings, LLC*, 27 AD3d 204 [2006]).

We find that these contracts are ambiguous as to whether

---

* The contracts all contain substantially the same provisions for purposes of this appeal. The quoted language is taken from one such contract.

they prohibit direct sales of national air time by the stations. First, although the agreements provide that plaintiffs are exclusive sales representatives, there is no provision that explicitly bars the stations themselves from selling national air time directly to buyers. Moreover, as defendants point out, the contracts provide that plaintiffs are entitled to commissions on national advertising sales "whether said contracts are written or obtained by [plaintiffs] or not." This language, together with the absence of a prohibition on direct sales, can be read as permitting the stations themselves to sell national advertising time as long as they pay plaintiffs a commission on the sales.

Other provisions of the contract, however, can reasonably be interpreted as prohibiting direct sales by the stations. First, the contracts require the stations to forward to plaintiffs "all orders for NATIONAL SPOT ADVERTISING received directly by STATION." In addition, the station agrees "to notify [plaintiffs] promptly when anyone makes a direct approach to STATION to buy NATIONAL SPOT ADVERTISING time, and to notify that prospective buyer that all such purchases will be made through [plaintiffs] and that contracts for all such orders will be issued by [plaintiffs]." Plaintiffs persuasively argue that it makes no sense that the stations would have to forward all orders directly received, and to tell such prospective buyers that the station cannot make a direct sale, yet then allow the stations to do just that.

The cases cited by defendants do not require a different result. All of the cases involve a dispute over a real estate broker's right to a commission and do not address the precise question presented here—whether certain language in a sales representative contract, as a matter of law, prohibits direct sales by the principal.

Because we find that the contracts here are reasonably susceptible of more than one interpretation and thus are ambiguous, the complaint should not have been dismissed pre-answer before the development of a full factual record as to the parties' intent (*see Hambrecht & Quist Guar. Fin., LLC v El Coronado Holdings, LLC, supra*). Concur—Gonzalez, P.J., Moskowitz, Freedman, Richter and Román, JJ.