■ Douglas Agor et al., Appellants, v Board of Education, Northeastern Clinton Central School District, et al., Respondents. [981 NYS2d 485]—

Peters, P.J. Appeal from an order of the Supreme Court (Ryan, J.), entered September 4, 2012 in Clinton County, which granted defendants' motion to dismiss the complaint.

Plaintiffs are former teachers and spouses of former teachers who retired from defendant Northeastern Clinton Central School District between 1996 and 2010.* The collective bargain-ing agreement (hereinafter CBA) in effect from July 1996 to June 2002 provided, as relevant here, that "[e]mployees who retire on or after July 1, 1996 with [15] or more years of service to the District shall be entitled to District provided individual or family health insurance coverage, as applicable, at no cost to the retiree." The two successive CBAs in effect from July 2002 to June 2010 contained that same provision with regard to retiree health insurance coverage, as well as a separate provi-sion expressly addressing Medicare reimbursement that stated, "as of July 1, 2003, [teachers] who retire from Northeastern Clinton [Central School District] with 25 years of consecutive service in the [D]istrict shall be entitled to Medicare reimburse-ment for themselves and their spouse[s], while the retired em-ployee is still living."

In 2010, after plaintiffs had retired, a successor CBA was exe-cuted between the District and the collective bargaining unit

---

* Plaintiffs Linda Brubaker and James Brubaker withdrew as plaintiffs to the action.

representing the District's teachers which, among other things, provided that employees retiring on or after July 1, 2010 shall not be provided with Medicare reimbursement upon retirement. Shortly thereafter, defendant Board of Education, Northeastern Clinton Central School District adopted a resolution which, among other things, eliminated Medicare reimbursements for District retirees who were not already in receipt of such reimbursements as of July 1, 2010. After receiving notice of the resolution, plaintiffs commenced this action for breach of contract and for a declaratory judgment, claiming that they are entitled to Medicare Part B reimbursement under the CBAs in effect at the time of the employees' retirement. Prior to answering, defendants moved to dismiss the complaint for failure to state a cause of action (see CPLR 3211 [a] [7]). Supreme Court granted the motion and dismissed the complaint, prompting this appeal.

In determining the obligations of parties to a contract, the threshold determination as to whether an ambiguity exists is a question of law to be resolved by the court (see *Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]; *Williams v Village of Endicott*, 91 AD3d 1160, 1162 [2012]; *Hudock v Village of Endicott*, 28 AD3d 923, 924 [2006]). "A contract is ambiguous if the language used lacks a definite and precise meaning, and there is a reasonable basis for a difference of opinion" (*Pozament Corp. v AES Westover, LLC*, 27 AD3d 1000, 1001 [2006] [citation omitted]; *accord Vectron Intl., Inc. v Corning Oak Holding, Inc.*, 106 AD3d 1164, 1165 [2013]; *see W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162-163 [1990]). "If the court concludes that a contract is ambiguous, it cannot be construed as a matter of law, and dismissal under CPLR 3211 (a) (7) is not appropriate" (*Telerep, LLC v U.S. Intl. Media, LLC*, 74 AD3d 401, 402 [2010] [citation omitted]; *see Vectron Intl., Inc. v Corning Oak Holding, Inc.*, 106 AD3d at 1165).

Supreme Court improperly concluded that the 1996-2002 CBA unambiguously failed to grant retirees rights to Medicare Part B reimbursements. As noted, that CBA provides health insurance coverage to a qualifying retiree "at no cost to the retiree." Notably, the CBA does not define what is encompassed by "health insurance coverage" and contains no reference to Medicare reimbursements (*cf. Williams v Village of Endicott*, 91 AD3d at 1162). While the subsequent CBAs at issue here contain language specifically addressing Medicare Part B reimbursements, this does not necessarily indicate that such reimbursement was not contemplated by the parties in the 1996-2002 CBA. It is equally plausible that such language was included in

the subsequent CBAs to clarify that the District's provision of health insurance "at no cost to the retiree" included reimbursements for Medicare Part B. Thus, the claims of those plaintiffs who retired under the terms of the 1996-2002 CBA and their spouses should not have been dismissed on the basis that such agreement did not grant them any rights to Medicare Part B reimbursement.

Moreover, the provisions in each of the CBAs regarding retiree health insurance, including reimbursement of Medicare Part B premiums, are ambiguous as to their duration. Indeed, the retiree health insurance provisions at issue here contain no language indicating the duration for which the District undertook to provide benefits to its retirees. Furthermore, given that employees are no longer represented by the union upon retirement and, therefore, are not involved in subsequent negotiations, a construction that would limit the right to coverage to the duration of the agreement could potentially "render[ ] the benefit inconsequential, . . . as the plaintiffs no longer would be in a position to negotiate with the [District] over future benefits" (*Kolbe v Tibbetts*, 22 NY3d 344, 353-354 [2013] [internal quotation marks and citation omitted]; *see Matter of Warner v Board of Educ., Cobleskill-Richmondville Cent. Sch. Dist.*, 108 AD3d 835, 837 [2013], *lv denied* 22 NY3d 859 [2014]; *Della Rocco v City of Schenectady*, 252 AD2d 82, 84 [1998], *lv dismissed* 93 NY2d 1000 [1999]; *Myers v City of Schenectady*, 244 AD2d 845, 847 [1997], *lv denied* 91 NY2d 812 [1998]). That each successive CBA sets forth the obligations of the District with respect to not only those individuals retiring thereunder, but also those who had retired under prior agreements, may suggest that the terms and conditions of health insurance for former retirees were being renegotiated at the expiration of each CBA and, therefore, that the level of benefits granted to retirees under any given CBA was limited to the duration of that agreement. On the other hand, it is just as plausible that each successive CBA carried over the obligations of the District with respect to those who retired under prior CBAs in recognition that the District was contractually bound by those prior agreements to provide such coverage. As the CBA provisions in question are susceptible to differing but reasonable interpretations, an ambiguity exists that requires consideration of extrinsic evidence relevant to the parties' intent (*see Kolbe v Tibbetts*, 22 NY3d at 355; *Vectron Intl., Inc. v Corning Oak Holding, Inc.*, 106 AD3d at 1167; *Williams v Village of Endicott*, 91 AD3d at 1163). Thus, at this pre-answer stage of the litigation, defendants' motion to dismiss the complaint should have been denied (*see Vectron Intl., Inc. v Corning Oak Holding, Inc.*, 106

AD3d at 1167; *Telerep, LLC v U.S. Intl. Media, LLC,* 74 AD3d at 402-403).

The additional argument advanced by defendants—that, regardless of any contractual right to Medicare Part B reimbursements, the Insurance Moratorium Law (*see* L 2009, ch 504, § 1, part B, § 14) authorizes the District to modify plaintiffs' coverage because a corresponding modification was made for active employees in the 2010-2014 CBA—was recently rejected by the Court of Appeals in *Kolbe v Tibbetts* (*supra*). As the Court there noted, the statute's "primary purpose was to prevent school districts from eliminating or reducing retiree health insurance benefits that were *voluntarily conferred* as a matter of school district policy, not rights negotiated in the collective bargaining context. . . . It was not meant to eviscerate contractual obligations and decades of contract law" (*Kolbe v Tibbetts,* 22 NY3d at 358 [internal quotation marks and citation omitted]).

Lahtinen, Stein and Egan Jr., JJ., concur. Ordered that the order is reversed, on the law, with costs, motion denied and matter remitted to the Supreme Court to permit defendants to serve an answer within 20 days of the date of this Court's decision.