******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JAMES G. GALLAGHER *v.* TOWN
OF FAIRFIELD ET AL.
(SC 20533)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

The plaintiff sought damages from the defendant town for, inter alia, breach
of contract. The plaintiff worked as a police officer for the town and
retired on disability in 1986 after sustaining an injury in the course of his
employment. In 1985, the town had entered into a collective bargaining
agreement with a union in which the plaintiff was member. At that time,
federal law did not permit municipal employees to enroll in Medicare,
but the law was amended thereafter to permit or require municipal
employees to participate in Medicare. The 1985 collective bargaining
agreement provided that union members who retired due to disability
would be entitled to town paid private health insurance. In 2016, the
year after the plaintiff reached the age of sixty-five, the town informed
him that he would be required to enroll in Medicare and to pay the cost
of his Medicare Part B premiums. The plaintiff claimed that the town
was bound to provide him with town paid private health insurance
under the collective bargaining agreement or, alternatively, that it was
obligated to subsidize the costs of his Medicare Part B premiums. Follow-
ing a trial, the court concluded that the collective bargaining agreement
did not bar the town from requiring that the plaintiff transition to Medi-
care, so long as the Medicare plan did not substantially reduce the
benefits provided. The court also concluded, however, that the town
was bound to subsidize the costs of his Medicare Part B premiums.
Thereafter, the town appealed and the plaintiff cross appealed from the
trial court's judgment. *Held*:

1. The trial court correctly concluded that the collective bargaining agree-
ment did not preclude the town from terminating the private health
insurance in which the plaintiff was enrolled and requiring him to transi-
tion to Medicare coverage: the collective bargaining agreement did not
specifically require that the plaintiff be placed, and that he remain, on
the same health insurance plan as the town's "active employees," as
that term did not appear in the agreement, and the agreement did not
address what rights retirees would have following the expiration of that
agreement in 1987; moreover, the agreement did not specify whether
Medicare qualifies as an insurance carrier or whether retirees who
become eligible for Medicare can be treated differently from active
employees, and, although a 2010 collective bargaining agreement
between the town and the union required eligible union retirees to
participate in Medicare, that did not necessarily mean that the silence
in the 1985 collective bargaining agreement with respect to that issue was
purposeful, as federal Medicare law changed after the 1985 collective
bargaining agreement went into effect, and testimony at trial suggested
that, when the town agreed, in 1985, to subsidize retirees' health insur-
ance costs for life, it was with the expectation that the retirees would
not be eligible to enroll in Medicare and that private insurance would
be their only available coverage option; furthermore, the town's course
of performance in allowing the plaintiff to remain enrolled in private
health insurance since his retirement in 1986 did not demonstrate that
the plaintiff was entitled to continue on that path, as he was not eligible
to enroll in Medicare until he turned sixty-five, the only reason why the
town did not immediately terminate the plaintiff's private insurance
coverage when he did turn sixty-five was that there was confusion over
whether that transition needed to be delayed pending the resolution of
a workers' compensation claim, and other union members who retired
along with the plaintiff under the 1985 collective bargaining agreement
also had been transitioned to Medicare.

2. This court declined to address the plaintiff's claim that the town illegally
transferred him from private health insurance to Medicare without his
consent, as the record was inadequate for review of that claim and the

claim was inadequately briefed.

3. The trial court incorrectly concluded that the town was required to reimburse the plaintiff for the cost of his Medicare premiums; the plaintiff conceded that the town was required to provide him only with benefits that are afforded to active employees, rather than benefits comparable to those that he received under the 1985 collective bargaining agreement, the 2010 collective bargaining agreement required that active employees share the costs of their private health insurance, active employees were required to contribute toward the town's premium equivalent costs, and the evidence adduced by the plaintiff suggested that he was paying no more for his health insurance than the town's active employees.

Argued January 14—officially released July 28, 2021*

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Fairfield and tried to the court, *Radcliffe, J.*; judgment in part for the plaintiff, from which the defendants appealed and the plaintiff cross appealed. *Reversed in part*; *judgment directed.*

*Catherine L. Creager*, with whom was *James T. Baldwin*, for the appellants-cross appellees (defendants).

*William J. Ward*, for the appellee-cross appellant (plaintiff).

*Opinion*

KAHN, J. This case requires that we construe a collective bargaining agreement between the named defendant, the town of Fairfield, and its police union. The agreement took effect in 1985, at a time when federal law did not permit municipal employees to participate in the Medicare system. The agreement provides that union members who retired early due to disability, such as the plaintiff, James G. Gallagher, as well as their eligible dependents, would be entitled to town paid private health insurance. The question presented is whether, following an intervening change in federal law that permits the plaintiff and other similarly situated retirees to enroll in Medicare upon reaching the age of sixty-five, the town may terminate their private health insurance, provide them with comparable town paid Medicare supplemental insurance, and require that they bear the costs of their Medicare premiums. The defendants have appealed, and the plaintiff has cross appealed, from the judgment of the trial court, which concluded that the town may require the plaintiff and his wife to enroll in Medicare but, in addition to paying for their Medicare supplemental insurance and any uncovered medical expenses, must also reimburse the costs of their Medicare Part B premiums. We agree with the former conclusion but hold that the town is not required to reimburse the Gallaghers for their Medicare premium costs. Accordingly, we affirm in part and reverse in part the judgment of the trial court.

I

The following facts, which were either found by the trial court or are undisputed, and procedural history are relevant to our disposition of the parties' claims. The plaintiff began working as a police officer for the town in 1974. In October, 1986, after twelve years of service, and after the plaintiff had sustained a serious injury in the course of his employment, he successfully petitioned the defendant Police and Fire Retirement Board of the Town of Fairfield to retire on disability. The plaintiff was thirty-five years old at that time.

At all relevant times, the plaintiff was a member of the Fairfield Police Union International Brotherhood of Police Officers, Local 530 (union), which is not a party to the present action. The union and the town entered into a three year collective bargaining agreement in 1985 (1985 CBA) that was in effect at the time of the plaintiff's retirement. Pursuant to that agreement, the relevant terms of which are set forth in part II of this opinion, the town was required to provide and subsidize the cost of private health insurance coverage for disability retirees, such as the plaintiff, and their eligible dependents.

On March 24, 2016, upon reaching the age of sixty-five, the plaintiff became eligible to receive Medicare

benefits. Around that time, the town's risk manager, Eileen Kennelly, informed the plaintiff that the town would continue to subsidize his private health insurance costs and those of his since deceased wife, Joy Gallagher, and that they would not be required to enroll in Medicare. The following year, however, Emmet P. Hibson, Jr., the town's human resources director and an employee of the defendant Town of Fairfield Personnel Department, notified the plaintiff that, effective July 1, 2017, he and his wife would be required to enroll in Medicare and to each pay the $134 monthly cost[1] of their Medicare Part B premiums. Hibson indicated that the town would transfer the Gallaghers to a private Medicare supplemental insurance plan and cover the costs of that plan. The town agrees that it is required to reimburse any medical costs not covered by Medicare, beyond a $100 annual deductible. Under the town's view of the agreement, then, the plaintiff was responsible for paying his own Medicare premiums, and it was responsible for paying the costs of his Medicare supplemental insurance, as well as any uncovered medical costs.

The plaintiff filed the present action in 2017. He alleged that the town was bound to continue to provide the Gallaghers with town paid private health insurance, both by the terms of the 1985 CBA and by the defendants' prior representations to him and through their course of performance, and, in the alternative, that the town was obligated to subsidize the costs of their Medicare Part B premiums.

Following a bench trial, the trial court concluded that the 1985 CBA does not bar the town from requiring that the Gallaghers transition from private health insurance to Medicare. The court also concluded that the doctrine of municipal estoppel did not apply because it determined that the Gallaghers did not rely to their detriment on the defendants' earlier representations that they would be permitted to remain enrolled in private insurance. The trial court also concluded, however, that the town was contractually bound to subsidize the costs of the Gallaghers' Medicare Part B premiums. The court rendered judgment accordingly, awarding $10,184 to reimburse the Gallaghers for the costs of their Medicare premiums paid through March 1, 2019, and ordering the town to reimburse them for the costs of premiums incurred after that date.

The defendants appealed and the plaintiff cross appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal and cross appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. Additional facts will be set forth as relevant.

## II

The plaintiff's primary argument on appeal is that the

town was contractually obligated to continue to provide the Gallaghers with town paid private health insurance throughout their lifetime and, therefore, that the trial court incorrectly concluded that the town was permitted to terminate the Gallaghers' private health insurance and require that they, instead, enroll in Medicare.[2] The plaintiff also contends that the defendants illegally transferred the Gallaghers from private health insurance to Medicare without their signatures or consent.[3] We consider each claim in turn.

A

"Principles of contract law guide our interpretation of collective bargaining agreements. . . . When, as in the present case, the trial court based its interpretation solely on the language of the contract, our standard of review is plenary." (Citation omitted; internal quotation marks omitted.) *Russo* v. *Waterbury*, 304 Conn. 710, 720, 41 A.3d 1033 (2012).

The following additional facts are relevant to the plaintiff's central claim that the town was contractually bound to maintain the Gallaghers' private health insurance. The relevant portions of the 1985 CBA[4] provide:

"ARTICLE IX—INSURANCE

"Section 1. The town shall provide and pay for the following insurance for each employee and his enrolled dependents:

"a. The Connecticut Hospital Service (Blue Cross) semi-private room credit rider and out-patient benefits credit rider plan.

"b. The town will provide and pay the cost of a major medical policy which shall contain a one hundred dollar ($100.00) deductible ($200.00 family maximum) and 80/20 [percent] co-insurance to $2,000.00 of covered charges per member per calendar year and 100 [percent] thereafter to the policy maximum of one million dollars ($1,000,000.00).

"c. In the event the town changes insurance carriers, i.e., Blue Cross/Blue Shield, the town agrees the present coverages and benefits shall remain in effect without any additional qualifications. For example, no employee, covered under the collective bargaining agreement, shall suffer any loss or reduction in coverages and benefits because of such change. Sixty (60) days prior to the implementation of any change in carrier, the town shall submit to the union the new coverage so that the union can ascertain that in fact the coverage is as set forth above.

* * *

"Section 7.—Insurance for Retirees. Effective 7-1-84, employees with at least twenty-five years of service who retire under the normal retirement provisions of the police and firemen's retirement plan and their

enrolled dependents shall be entitled to town paid health insurance coverage. Employees who retire under the disability provisions of the retirement plan and their enrolled dependents shall also be entitled to town paid health insurance coverage. The benefits to be provided are listed in article IX Insurance, [§] 1 a, b, c . . . . Employees who retire with at least twenty-five (25) years of service but who are less than fifty-one (51) at the time of retirement, other than retirees under the disability provisions of the retirement plan, shall, upon attaining the age of fifty-one (51) be entitled to the benefits listed in article IX, [§] 1a., b., c. . . . in effect at the time of their retirement. . . ."

The plaintiff also entered into evidence a copy of the collective bargaining agreement between the town and the successor to the union that was in effect between 2010 and 2013 (2010 CBA). Article IX, § 9.03, of the 2010 CBA provides in relevant part: "Except as otherwise provided for below, employees entitled to the retiree medical insurance benefits under this section shall continue to receive in retirement the same medical insurance benefits they received as an active employee, with the understanding that if the active employees switch to a new plan which is substantially equivalent to or better than the plan the employee retired under, the retiree will be switched to the new plan. . . . Such coverage shall change to the Medicare carve out plan at age 65, in accordance with current practice. . . .

"Employees eligible for Social Security Medicare benefits shall be required to participate in the Medicare Part A and B plans upon attaining eligibility. [The coverages afforded to employees retiring in accordance with the disability provisions of the police and fire retirement plan and their eligible enrolled dependents] shall be reduced to a Medicare carve-out for those covered upon reaching the age of 65. The cost of Medicare, if any, shall be borne by the retiree. . . ."

The trial court concluded that the 1985 CBA permits the town to transfer disability retirees from a private health insurance plan to a supplemental Medicare plan, effectively forcing them to enroll in Medicare in order to maintain coverage, so long as the Medicare plan does not substantially reduce the benefits provided. The court further concluded that the benefits provided by Medicare, in tandem with the town's Medicare supplemental insurance plan, were at least as favorable as those afforded by the private insurance plan under which the plaintiff retired, especially in light of the fact that the town has agreed to reimburse any medical expenses not covered by Medicare.[5]

The plaintiff contends that the trial court misconstrued the 1985 CBA because, he alleges, that agreement "specifically requires the [town] to provide the same health insurance to the plaintiff and his wife as it provides to its active employees," and the town continues

to provide its active union employees with private medical insurance. We are not persuaded.

As an initial matter, we note that the plaintiff is simply incorrect when he contends that the 1985 CBA *specifically* requires that he be placed, and that he remain, on the same health insurance plan as the town's active employees. The term "active employees" does not appear anywhere in the 1985 CBA, and that agreement does not, by its terms, address what rights, if any, retirees such as the plaintiff will have following the expiration of the agreement in 1987. Although it is reasonable to assume that the parties intended that employees who retired during the three years when the 1985 CBA was in effect would continue to receive the retirement benefits enumerated in article IX after the agreement expired in 1987, whether those benefits were to remain static, be pegged to those due to future active employees under future collective bargaining agreements, or be defined in some other manner is never *expressly* set forth in the agreement. Moreover, the 1985 CBA leaves it to the union to approve whether any change in town provided health insurance is acceptable. Nothing in the agreement, then, specifically bars the town from transferring the Gallaghers from private insurance to Medicare.

The plaintiff offers three additional arguments as to why the 1985 CBA bars the town from transferring him to Medicare. First, the plaintiff notes that article IX, § 7, of the 1985 CBA provides that employees on disability retirement are entitled to the benefits "listed in article IX Insurance, [§] 1 a, b, c, [§] 2, [§] 3, [§] 5 and [§] 6." He further notes that article IX, § 1 (a), commits the town to providing and paying for a Blue Cross insurance plan for each employee, and that article IX, § 1 (c), indicates that, "[i]n the event the town changes insurance carriers, i.e., Blue Cross/Blue Shield, the town agrees the present coverages and benefits shall remain in effect without any additional qualifications." The plaintiff reads this language to mean that, at least as long as active employees are entitled to private health insurance, he must be as well.

We disagree that the plain language of the 1985 CBA unequivocally bars the town from transferring eligible disability retirees to Medicare. Article IX, § 1 (a), provides for one specific insurance plan that was available at the time, the "Connecticut Hospital Service (Blue Cross) semi-private room credit rider and out-patient benefits credit rider plan." The parties agree that the town is not bound to continue to provide that plan, which no longer exists but, instead, may offer other plans affording comparable benefits. Article IX, § 1 (c), sets forth the rules that apply in the event that the town changes private insurance carriers, such as moving from Blue Cross to a different carrier. The contract is simply silent as to whether (1) Medicare qualifies as an insurance carrier for purposes of article IX, § 1 (c), and

(2) retirees who become eligible for Medicare can be treated differently from active employees, none of whom, presumably, is Medicare eligible. Cf. *Agor* v. *Board of Education*, 115 App. Div. 3d 1047, 1048–49, 981 N.Y.S.2d 485 (2014) (collective bargaining agreement that provided retirees no cost health insurance without express reference to Medicare was deemed ambiguous with respect to Medicare reimbursement requirement). Accordingly, we are not persuaded by the plaintiff's argument that the plain language of the 1985 CBA bars the town from transitioning eligible retirees to Medicare.

Second, the plaintiff relies on the principle that, when parties include a provision in one writing and omit that provision from another comparable writing, that omission may be deemed to be purposeful. See, e.g., *Gibbs International, Inc.* v. *ACE American Ins. Co.*, Docket No. 7:15-cv-4568 (BHH), 2018 WL 1566730, *11 (D.S.C. March 30, 2018). He emphasizes the fact that the 2010 CBA expressly requires union employees who retired pursuant to the terms of that agreement to participate in Medicare upon attaining eligibility, in lieu of the town's private health insurance plans. The plaintiff contends that the fact that the town and the union agreed to include a Medicare requirement in the 2010 CBA but not in the 1985 CBA must have been a purposeful and deliberate indication that there was no intention that retirees under the earlier CBA could be made to enroll in Medicare. This argument, ultimately, is unpersuasive.

The fact that parties do not speak to an issue in one contract but proceed to address it in a subsequent contract does not necessarily mean that their initial silence was purposeful. When subsequent agreements between the parties address and resolve a previously unaddressed issue, the alteration may mean nothing more than that the parties have addressed a gap in the initial contract, reaching agreement on an issue that they had not previously considered or anticipated. See, e.g., *Agor* v. *Board of Education*, supra, 115 App. Div. 3d 1048–49 (when initial collective bargaining agreement was silent as to Medicare and subsequent agreements expressly provided that retirees would be entitled to Medicare Part B reimbursements, court deemed it "equally plausible" that such language was included in subsequent agreements to clarify intent, rather than to change meaning, of initial agreement).

In this case, the plaintiff's argument fails to account for the fact that federal Medicare law changed after the 1985 CBA went into effect. Prior to April, 1986, state and municipal employees generally were not eligible to participate in the Medicare program. See Senate Finance Committee, Report, Financing Comprehensive Health Care Reform: Proposed Health System Savings and Revenue Options (May 20, 2009), reprinted in [2009-

2 Transfer Binder: Current Developments] Medicare & Medicaid Guide (CCH) ¶ 52,862, pp. 112,582–83. They did not pay Medicare taxes (nor did their employers pay such taxes on their behalf), and they were not eligible to collect Medicare benefits upon retirement. Congress amended the Medicare laws in 1986, while the 1985 CBA was in effect. See Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. No. 99-272, 100 Stat. 82 (1986). The Medicare and Medicaid Budget Reconciliation Amendments of 1985, contained in the omnibus act, provided that state and municipal employees hired after March 31, 1986, were required to participate in the Medicare system. See id., § 13205, 100 Stat. 313–14, codified as amended at 26 U.S.C. § 3121 (u) (2018). As with other employees, they (and their employers on their behalf) were required to contribute 1.45 percent of their income in Medicare taxes, and they became eligible to enroll in Medicare at the age of sixty-five, assuming that they had paid into the system for a sufficient number of quarters. See 26 U.S.C. § 3101 (b) (2018); 26 U.S.C. § 3111 (b) (2018); see also State of Connecticut, Payroll Manual (Rev. 1995) § 3 (Social Security/Medicare Exemptions), available at https://www.osc.ct.gov/manuals/payroll/section3.htm (last visited July 27, 2021). Accordingly, it seems very likely that the town and the union omitted any mention of Medicare in the 1985 CBA not out of a conscious agreement that union members could not be *forced* to enroll in Medicare upon reaching the age of sixty-five but, rather, in light of the fact that the town's employees were not yet *permitted* to do so under federal law. There was testimony at trial suggesting that, when the town agreed to subsidize retirees' health insurance costs for life, it was with the expectation that private insurance would be their only available coverage option.[6] Federal law was amended soon thereafter to permit or require municipal employees to participate in Medicare, and subsequent labor agreements between the town and the police union reflect that fact.

This intervening change in federal law illuminates the flaw in the plaintiff's interpretation of the parties' omission of any reference to Medicare in the 1985 CBA. It seems clear that the omission reflected the fact that the parties could not then have anticipated that Congress would amend federal law to allow members of the police union to enroll in Medicare. There was undisputed testimony at trial that the language requiring eligible retirees to enroll in Medicare was first included in a collective bargaining agreement between the town and the union in 1989 or 1990, following the enactment of the new federal Medicare provisions. Viewing the matter in this light, we are persuaded that the Medicare provisions in subsequent agreements indicate how the union and the town would have addressed the question of Medicare eligibility in 1985, had they been aware of the impending change in federal law at that time. It

certainly stands to reason that, once union members (and the town on their behalf) began paying into the Medicare system, the town could expect that those employees would begin to collect their (largely) federally funded benefits as they became eligible, rather than continue to have the town subsidize the costs of private insurance.

The plaintiff's third and final argument is that the defendants have, by their course of performance, demonstrated that he is entitled to remain enrolled in private health insurance. He notes that he has been allowed to remain enrolled in the same plan as the town's active employees since his retirement, both before and after he reached the age of sixty-five.

We begin by noting that the fact that the town allowed the plaintiff to remain enrolled in private insurance *before* he turned sixty-five does not bear on the question presented, because he was not Medicare eligible prior to that time. It is only the parties' conduct since the plaintiff and other, similarly situated retirees turned sixty-five and became Medicare eligible that is relevant to the question of whether the town is allowed to transition them from private insurance to Medicare.

The record reveals that the delay in the transition of the plaintiff from private insurance to Medicare was not the result of the town's believing that he was entitled to remain enrolled in private insurance. There was testimony, on which the trial court reasonably could have relied, that the only reason why the town did not immediately terminate the plaintiff's private insurance coverage when he turned sixty-five was some legal confusion over whether that transition needed to be delayed pending the resolution of a workers' compensation claim. It is undisputed that all of the town's unionized Medicare eligible retirees are enrolled in Medicare. Most important, there was undisputed testimony at trial that the other union members who retired along with the plaintiff under the 1985 CBA also have been transitioned to Medicare.

Accordingly, to the extent that the record evidences a course of performance, it seems clear that the town consistently has required that all Medicare eligible employees enroll in Medicare. Furthermore, there is no indication that the union, which is tasked with ascertaining that any change in a member's health plan comports with the requirements of article IX, § 1, of the 1985 CBA, ever exercised its right to challenge the transition to Medicare as providing benefits inferior to those afforded under the Blue Cross plan. For these reasons, we conclude that the trial court correctly determined that the 1985 CBA does not preclude the town from terminating the Gallaghers' private health insurance, so long as the town provides them with substantially similar benefits in the form of supplemental Medicare coverage.

## B

The plaintiff also contends that the defendants illegally transferred him and his wife from private health insurance to Medicare without their consent. The plaintiff's concern appears to be that the town's benefits manager, Cheryl Lynch, signed her own name on the signature line in the written request to Anthem Blue Cross/Blue Shield (Anthem), the town's benefits management company, to enroll the Gallaghers in a Medicare supplemental insurance plan, rather than obtaining their signatures. In other words, there is no allegation that Lynch either forged any signatures or forced the Gallaghers to enroll in the Medicare program. Rather, she appears to have, through Anthem, enrolled the Gallaghers in a Medicare supplemental insurance plan so that they would be fully covered once their previous insurance policy was terminated.

Although the plaintiff contends that Lynch's action was illegal, he fails to cite any statute, regulation, or common-law rule that she is alleged to have violated. There is also no evidence in the record to rebut Lynch's testimony that Anthem permits the employer's agent to sign these forms when she enrolls members in new health insurance plans. Moreover, there is no indication in the record that the trial court ever addressed this issue or made any related findings of fact, and the plaintiff has not requested an articulation. Because the record is inadequate and the claim is inadequately briefed, we decline to consider this claim. See, e.g., *Estate of Rock* v. *University of Connecticut*, 323 Conn. 26, 33, 144 A.3d 420 (2016).

## III

We next turn our attention to the defendants' cross appeal. The defendants contend that the trial court, having correctly concluded that the 1985 CBA did not bar them from requiring that the Gallaghers enroll in Medicare in lieu of private health insurance, should not have required the town to reimburse the costs of the Gallaghers' Medicare premiums. We agree.

In reaching the conclusion that the town was contractually required to subsidize all of the Gallaghers' health insurance costs, including their Medicare premiums, the trial court was persuaded by two arguments. First, the trial court was persuaded by the fact that, whereas the 1985 CBA did not expressly reference Medicare, subsequent collective bargaining agreements between the town and the union have expressly required employees to participate in Medicare when they become eligible and also have specified that the costs of Medicare premiums are the responsibility of the retiree. The court reasoned that "[t]he fact that Medicare . . . [is] specifically referenced in [the 2010 CBA] and that the employee is now obligated to pay for that coverage seems both purposeful and deliberate. [The 2010 CBA]

unambiguously places a new burden on the plaintiff which he did not have at the time of his retirement." In part II of this opinion, we explained why this reasoning, although possibly valid in other contexts, fails in the present case to account for the intervening change in federal Medicare law, which the parties to the 1985 CBA did not address or anticipate when they negotiated that agreement.[7]

Second, the trial court observed that the 1985 CBA obligates the town to defray the costs of "town paid health insurance coverage" and provides that present coverages and benefits will be maintained "without any additional qualifications." The court reasoned that requiring retirees to shoulder the costs of Medicare premiums in order to obtain insurance would establish, in essence, an additional qualification. The defendants argue, to the contrary, that the trial court, as a matter of law, failed to consider the fact that retirees such as the plaintiff are required to contribute to their health insurance costs under both plans. It is true that retirees now must pay $134 each month in Medicare premium costs, whereas the town paid private insurance plan under which the plaintiff retired required no fixed monthly contribution. However, the defendants note that those private plans had their own cost sharing components. Under the Blue Cross plan described in the 1985 CBA, for example, members had to pay deductibles and 20 percent coinsurance, to a maximum of $2000 per year. In addition, that plan had a maximum lifetime payout of one million dollars, whereas there is no life-time maximum benefit under Medicare.[8]

We need not determine whether the defendants are correct that the plaintiff's benefits under Medicare are comparable to those provided through the private plan under which he retired. Both in his briefs and at oral argument before this court, the plaintiff acknowledged that the town is required to provide him only with those health insurance benefits that are afforded to current active employees, rather than benefits comparable to those that he received under the 1985 CBA at the time of his retirement.[9] The plaintiff's counsel specifically conceded at oral argument before this court that, if active employees were to begin paying a share of their insurance premiums, then the plaintiff could be made to do so as well. In fact, sometime after 1986, the town ceased its practice of subsidizing the full costs of employee private health insurance. As noted, although the current collective bargaining agreement between the police union and the town was not admitted into evidence, the plaintiff did submit the 2010 CBA into evidence, and he has acknowledged that the 2010 CBA is typical of other subsequent collective bargaining agreements.

The 2010 CBA requires that active employees share the costs of their private health insurance. Beginning

on July 1, 2009, for example, active employees were required to contribute $31 per week, or $134 per month, toward the cost of their private health coverage. Notably, $134 per month is the precise amount that the plaintiff alleges that he and his wife have been required to contribute toward their Medicare premiums. This is consistent with Lynch's testimony that the town's Medicare supplemental insurance health plan has been designed to mirror the plan available to current active employees and to retirees under the age of sixty-five. In addition, beginning in March, 2013, active employees were required to contribute between 11 and 13 percent of the blended per employee rate for the town's premium equivalent costs—its total health care costs. At oral argument before this court, the town's counsel represented that these cost sharing provisions remain in effect, and the plaintiff has not contended otherwise.

Because the plaintiff concedes that he may be required to contribute the same amount as active union employees, and because the evidence submitted by the plaintiff suggests that he is paying no more for his health insurance than the town's active employees, we agree with the defendants that the trial court should not have required the town to reimburse the Gallaghers' Medicare premium costs.

The judgment of the trial court is reversed with respect to the requirement that the town reimburse the Gallaghers' Medicare premium costs and is affirmed in all other respects, and the case is remanded with direction to render judgment consistent with this opinion.

In this opinion the other justices concurred.

* July 28, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The trial court's statement that the Gallaghers' combined Medicare Part B premium costs totaled $536 per month appears to be a scrivener's error derived from adding the plaintiff's $134 *monthly* fee with his wife's $402 *quarterly* fee, which is also $134 per month. There is no evidence in the record that would support the $536 figure, and the plaintiff acknowledges that the $134 per person figure is correct.

[2] We note that the town could not, of course, legally require that the Gallaghers enroll in Medicare. We use such language in this opinion simply as a shorthand for the concept that, by terminating the Gallaghers' private health insurance but agreeing to provide supplemental Medicare coverage, the town effectively required that they enroll in Medicare in order to continue to receive subsidized insurance.

[3] Because we conclude that the town did not act illegally in transferring the Gallaghers to Medicare and was not obligated to reimburse the costs of the Gallaghers' Medicare premiums, and in light of the defendants' representations that the town will reimburse the plaintiff for any costs that are not covered by Medicare or supplemental insurance, we need not address the plaintiff's additional claim on appeal that the trial court should have awarded him other out-of-pocket costs associated with the transition to Medicare.

[4] For ease of review, throughout this opinion, we have modified the capitalization of the relevant contractual language in conformance with the style of this court, without noting those changes in brackets.

[5] For the same reasons, the trial court concluded that the town was in compliance with General Statutes § 7-459c, which, among other things, prohibits any municipality that provides retiree group health insurance benefits from diminishing or eliminating such benefits in violation of any collective

bargaining agreement.

[6] Although the record is silent on the question, we can assume that the plaintiff (and the town, on his behalf) began paying Medicare taxes after the Medicare and Medicaid Budget Reconciliation Amendments of 1985 went into effect. Under that law, states were given the option as to whether to provide Medicare coverage for state and municipal employees, such as the plaintiff, who were hired prior to April 1, 1986. See 42 U.S.C. § 418 (2018); Senate Finance Committee, supra, Medicare & Medicaid Guide (CCH), ¶ 52,862, pp. 112,582–83. If the plaintiff had not paid into the system for at least forty quarters, he would not now be eligible to receive Medicare benefits. See 42 U.S.C. 414 (2018).

[7] We also note that there was undisputed testimony at trial suggesting that the only retired union employees for whom the town pays Medicare Part B premiums are two sergeants who retired under a prior collective bargaining agreement that expressly provided that the town would subsidize the costs of their Medicare Part B premiums. It seems clear, then, that, when the parties intended that the town would reimburse employees' premium costs, they stated their intention expressly.

[8] Notably, before the trial court, the plaintiff testified that, as a result of an incident in 2016, he accrued medical bills approaching one million dollars. This fact suggests that, had he remained enrolled in the original Blue Cross plan, he might have been left to face this treatment uninsured.

[9] Because the plaintiff adopts this interpretation, we need not determine whether he accurately interprets article IX, § 7, of the 1985 CBA to mean that employees who retired under the disability retirement provisions of the town's retirement plan would continue to receive the same benefits as the town's active employees, as those benefits changed over time.

————————————————