Mayville Engg. Co., Inc. v Peloton Interactive, Inc. (2024 NY Slip Op 01990)

Mayville Engg. Co., Inc. v Peloton Interactive, Inc.

2024 NY Slip Op 01990

Decided on April 11, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 11, 2024

Before: Oing, J.P., Friedman, Kapnick, Scarpulla, Pitt-Burke, JJ. 

Index No. 652735/22 Appeal No. 2024-2025 Case No. 2023-00706 2023-03817 

[*1]Mayville Engineering Company, Inc., Plaintiff-Respondent-Appellant,
v
Peloton Interactive, Inc., Defendant-Appellant-Respondent. 

Covington & Burling LLP, New York (Mark P. Gimbel of counsel), for appellant-respondent.
Foley & Lardner LLP, New York (Peter N. Wang of counsel), for respondent-appellant.

Order, Supreme Court, New York County (Jennifer G. Schecter, J.), entered February 6, 2023, which, to the extent appealed from, granted, with prejudice, the motion of defendant to dismiss the cause of action for breach of the implied duty of good faith and fair dealing (second cause of action) and denied defendant's motion to dismiss the cause of action for breach of contract (first cause of action), unanimously affirmed, with costs. Order, same court and Justice, entered on or about January 6, 2023, which denied defendant's motion to compel discovery, unanimously modified, in the exercise of discretion, to grant the motion to the extent indicated in this decision, and otherwise affirmed, without costs.
Under the terms of a supply agreement between the parties, plaintiff was to manufacture custom parts for defendant's home exercise bikes. The agreement contained a "volume-based pricing agreement," which incorporated a "volume-based pricing model" for various component parts that plaintiff was to manufacture. The pricing model was set forth in exhibit A to the agreement; that exhibit, in turn, comprised 12 pricing charts, 11 of which corresponded to each part to be manufactured by plaintiff. The first column of each of those 11 charts shows the number of parts to be ordered by defendant, with the first row showing zero parts ordered, and the remaining columns set out, among other data, columns for revenue. All columns, including the zero-parts row, show some revenue. Plaintiff argues that the volume-based pricing model, as illustrated by the charts, guaranteed that defendant was obliged to make fixed payments to plaintiff even when no orders for those parts were actually placed. Defendant, on the other hand, argues that the supply agreement does not require it to make any payments to plaintiff where it did not actually order any parts from plaintiff, and that the only reasonable interpretation of the agreement, including the pricing model, is that defendant was entitled to place no orders and make no payments.
Plaintiff sufficiently stated a claim for breach of contract, as it has offered a facially reasonable reading of the relevant contract provisions. Defendant does not make a definitive showing that plaintiff's reading of the agreement is unreasonable as a matter of law, or that it is foreclosed by the contractual language or any other evidence in the record. On the contrary, plaintiff provides a plausible explanation for the inclusion of revenue in the zero-unit column — namely, that the guaranteed payment obligation served to mitigate plaintiff's required upfront investment costs. Therefore, the court correctly found that a contractual ambiguity exists, requiring the denial of the motion to dismiss (see Telerep, LLC v U.S. Intl. Media, LLC, 74 AD3d 401, 402 [1st Dept 2010]).
However, plaintiff failed to state a claim for breach of the implied duty of good faith and fair dealing. The claim is based on plaintiff's allegations that under the [*2]parties' agreement, defendant had an implied obligation to reimburse plaintiff for its reasonable and actual fixed costs, and that plaintiff entered the agreement in reliance on defendant's promises to do so. These allegations, however, do not support the cause of action. A favorable allocation of risks to one party is not an implied duty inherent in an agreement, nor would it be reasonable for a promisee to believe that allocating risks in its favor is an inherent obligation of a promisor (see Jaffe v Paramount Communications, 222 AD2d 17, 22-23 [1st Dept 1996]; see also Dalton v Educational Testing Serv., 87 NY2d 384, 389-390 [1995]). Rather, any claim concerning the allocation of the risk of plaintiff's up-front investment costs could arise only from a negotiated contractual term or some other legal basis for undertaking the obligation. Furthermore, the dismissal with prejudice was appropriate, as the record offers no evidence to suggest that allowing plaintiff to replead would cure the deficiency in the cause of action (see Izhaky v Izhaky, 215 AD3d 588, 589 [1st Dept 2023]; Carde v Rodriguez, 189 AD3d 498, 498 [1st Dept 2020]).
The court improvidently exercised its discretion in declining to order plaintiff to produce discovery with regard to its "actual and avoided costs," that is, the amounts plaintiff actually invested to perform its obligations under the agreement and the costs plaintiff was able to recoup by selling or repurposing any equipment and facilities it had acquired for the agreement. These documents may provide significant insight into what the parties understood regarding those costs at the time they entered the contract and into what they intended with respect to the meaning of the contract (see Eisenberg v Weisbecker, 190 AD3d 549, 550 [1st Dept 2021]). To the extent plaintiff contends that the requested discovery is overbroad, Supreme Court may address that contention upon remand.
We also reject defendant's argument that under plaintiff's interpretation of the agreement, the $107 million in damages sought constitutes an unenforceable penalty. If the court ultimately accepts plaintiff's interpretation of the contract as including guaranteed a minimum revenue payment, that payment would simply constitute a contract term negotiated between sophisticated parties, not a penalty (see e.g. Moskowitz v Pavarini McGovern LLC, 83 AD3d 438, 439 [1st Dept 2011]).
Whether the amounts owed under a contract such as the one presented here are subject to a mitigation analysis is a separate issue that Supreme Court left undecided, and we need not resolve it on this appeal.
We have considered the remaining contentions and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 11, 2024