******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

GREGORY STIEGLER ET AL. *v.*
CITY OF MERIDEN ET AL.
(SC 20803)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker, Alexander and Suarez, Js.

*Syllabus*

The plaintiffs, former Meriden firefighters who retired in January, 2015,
sought to recover damages from the defendants, the city of Meriden
and the Meriden Municipal Pension Board, for, inter alia, their alleged
breach of a collective bargaining agreement between the city and the
plaintiffs' union. The collective bargaining agreement contained a wage
reopener provision and incorporated by reference the pension plan for
fire employees that the city had adopted. Under the terms of the pension
plan, a firefighter can become eligible for retirement after he or she
has completed twenty-five years of service, or after the firefighter has
attained the age sixty-five, in which case he or she is retired automati-
cally, effective the first day of the month following the sixty-fifth birth-
day. Additionally, under the plan, the amount of any retiree's normal
retirement benefit is calculated in part by using his or her base rate of
pay, which is defined as the "annual pay as fixed from time to time by
the collective bargaining agreement." The plaintiffs, all of whom were
younger than sixty-five at the time of retirement, had retired voluntarily
following twenty-five years of service with the city. At the time of their
retirements, the city and the union were negotiating a wage reopener
for the 2014–2015 contract year. When those negotiations reached an
impasse, the matter proceeded to interest arbitration pursuant to the
relevant provision (§ 7-473c) of the Municipal Employee Relations Act.
The arbitration panel issued an award granting all Meriden firefighters
a 2 percent wage increase retroactive to January 1, 2015, which was
before the plaintiffs' retirements took effect. The parties, having agreed
that the facts were not in dispute and that the case presented purely
legal questions, agreed to have the case tried to the court, which con-
cluded, inter alia, that the defendants had breached the collective bar-
gaining agreement by failing to recalculate the plaintiffs' pension benefits
based on the retroactive wage increase awarded in arbitration. The court
reasoned that the interest arbitration award was "final and binding"
pursuant to § 7-473c (d) (10) and that that award was explicit that the
effective date of the wage increase was January 1, 2015, at which time
the plaintiffs were employees of the city and members of the union.
Accordingly, the court rendered judgment in favor of the plaintiffs with
respect to liability on the breach of contract claims, the parties stipulated
to the amount of damages, and the court rendered judgment for the
plaintiffs, from which the defendants appealed. *Held*:

1. The defendants could not prevail on their unpreserved claim that the trial
   court lacked subject matter jurisdiction because the plaintiffs did not
   exhaust their administrative remedies by requesting relief directly from
   the pension board prior to filing the present action:

   This court has held that the exhaustion of administrative remedies is
   required when a statute, regulation, or contractual provision explicitly
   requires it or, if the exhaustion requirement is not explicit, when the
   statutory, regulatory, or contractual scheme has an established proce-
   dure to redress a particular wrong, in which case the party must follow
   the specified remedy and may not institute a proceeding that might have
   been permissible in the absence of such a procedure.

   In the present case, the exhaustion doctrine was inapplicable insofar as
   the pension plan provisions that the defendants relied on to support
   their exhaustion argument, which vested the pension board with the
   power and duty to determine an employee's eligibility and rights, and
   to do all things necessary and proper toward carrying out the pension
   plan's purposes, contained no explicit exhaustion requirement and also
   failed to establish an exhaustion requirement by implication, there having

been no established administrative process pursuant to which retirees could seek the recalculation of their pension benefits.

2. The trial court incorrectly determined that the defendants had breached the collective bargaining agreement by failing to recalculate the plaintiffs' pension benefits to reflect the 2 percent wage increase awarded in arbitration, and, accordingly this court reversed the trial court's judgment as to the plaintiffs' breach of contract claims and remanded the case with direction to render judgment for the defendants on those claims:

Although the parties agreed that the interest arbitration award was final and binding, they disagreed as to whether the plain language of the collective bargaining agreement, the pension plan, and the interest arbitration award required the defendants to recalculate the amount of the plaintiffs' pension benefits to account for the 2 percent retroactive wage increase, and this court, upon reviewing the relevant provisions of those documents, concluded that, although those documents were clear that the 2 percent wage increase retroactively applied to employees' wages, they were ambiguous with respect to whether the 2 percent wage increase retroactively applied to voluntary retirees earning pension benefits.

In the present case, the parties had agreed that the relevant contract provisions could be construed as a matter of law, the parties did not introduce extrinsic evidence of the contracting parties' intent, and, therefore, in light of the way the case was tried by the parties and decided by the trial court, the issue on appeal presented a question of law for this court to determine independently, without reference to extrinsic evidence of intent, and in accordance with general principles of contract construction.

This court concluded that the defendants' construction of the operative documents, pursuant to which the 2 percent wage increase applied only to active employees and not to former employees who voluntarily retired before the issuance of the arbitration award, was the more reasonable construction insofar as it avoided rendering a certain provision of the pension plan superfluous and resulted in a more harmonious construction of the other relevant contractual provisions.

Specifically, the pension plan includes a provision stating that mandatory retirees who are forced to retire under the age sixty-five retirement rule while contract negotiations between the city and the union are ongoing may have their retirement and any payout retroactively increased by any raises for the time they would have been working prior to retirement, that provision would be unnecessary if both mandatory and voluntary retirees were entitled to a retroactive increase in pension benefits to reflect a retroactive wage increase for hours worked prior to retirement, and, by specifying that only mandatory retirees are entitled to a retroactive adjustment of pension benefits following a negotiated wage increase, the pension plan implicitly excluded voluntary retirees from receiving the same benefit.

Moreover, the pension plan included certain language providing that a retroactive benefit payment would in no event be made and that a retiree's base rate of pay is limited to the amount the retiree was receiving at the time of retirement, and, when read together, those provisions further bolstered the conclusion that the pension plan did not permit the recalculation of pension benefits for voluntary retirees following a negotiated wage increase with retroactive effect.

Furthermore, there was no merit to the plaintiffs' argument that the provision allowing for retroactive increases for mandatory retirees was not meant to exclude by implication voluntary retirees from receiving the same benefit or their argument that construing the operative documents as allowing the 2 percent wage increase to apply only to active employees would render certain provisions of the pension plan superfluous.

In addition, the plaintiffs' claim that fixing a retiree's base rate of pay as of the date of retirement would yield an absurd result was unavailing, as it was not irrational for the contracting parties to negotiate an agreement that treats the wages of employees differently from the pension benefits of retirees or a particular class of retirees, such as voluntary retirees, and it would not be absurd for the contracting parties to provide employees with the ability to seek a wage increase through the wage

reopener process, while at the same time limiting the effect of any retroactive increase obtained in that process to retirees who are forced to retire during ongoing contract negotiations due to the age sixty-five retirement rule.

This court's conclusion was not inconsistent with the interest arbitration award, insofar as the 2 percent increase, as well as the arbitration panel's consideration of the statutory factors enumerated in § 7-473c (d) (9), was limited to the wages payable to employees, no mention was made of retirees, voluntary or otherwise, or the method used to calculate pension benefits, and, in the absence of extrinsic evidence of intent, this court could not conclude that the interest arbitration award modified the collective bargaining agreement to require the recalculation of pension benefits for retirees, like the plaintiffs, who voluntarily retired during ongoing contract negotiations.

Argued October 25, 2023—officially released February 6, 2024

*Procedural History*

Action to recover damages for breach of contract, and for other relief, brought to the Superior Court in the judicial district of New Haven and tried to the court, *Hon. Jon C. Blue*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment in part for the plaintiffs, from which the defendants appealed. *Reversed in part*; *judgment directed.*

*Raymond J. Rigat*, for the appellants (defendants).

*James J. Healy*, for the appellees (plaintiffs).

*Opinion*

ECKER, J. The plaintiffs are three firefighters who retired during ongoing contract negotiations between their municipal employer and their union regarding a wage reopener to their collective bargaining agreement. After the effective dates of their retirements, an arbitration panel issued an interest arbitration award pursuant to the provisions of General Statutes § 7-473c of the Municipal Employee Relations Act, General Statutes § 7-460 et seq., granting all firefighters in that municipality a retroactive wage increase. The plaintiffs filed a breach of contract action, alleging, among other things, that they were entitled to a recalculation of their pension benefits to reflect the retroactive wage increase. The trial court agreed with the plaintiffs and rendered judgment in their favor on the breach of contract claims. On appeal, the defendants claim that the trial court lacked subject matter jurisdiction because the plaintiffs had failed to exhaust their administrative remedies and, on the merits, that the trial court had incorrectly concluded that the plaintiffs were entitled to a recalculation of their pension benefits. We conclude that the trial court properly exercised jurisdiction but erroneously determined that the plaintiffs are entitled to receive a retroactive increase in their pension benefits and, therefore, reverse in part the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The named defendant, the city of Meriden, employed each of the plaintiffs, Gregory Stiegler, William Bergeron, and Kevin Grant, as a firefighter for more than twenty-five years. Prior to the effective dates of their retirements in January, 2015, a collective bargaining agreement between the city and the plaintiffs' union, Meriden Fire Local #1148 International Association of Fire Fighters AFL-CIO (union), governed the plaintiffs' employment relationship with the city. The collective bargaining agreement covered the time period between July 1, 2011, and June 30, 2015, and incorporated by reference the terms of the City of Meriden Fire Employees Pension Plan (pension plan), which the city had adopted by municipal ordinance. The collective bargaining agreement contained a wage reopener provision, pursuant to which the city and the union commenced wage negotiations for the final contract year of 2014 to 2015. Contract negotiations reached an impasse, and the matter proceeded to interest arbitration in accordance with the statutory requirements set forth in § 7-473c. Arbitration hearings were held on October 9 and December 5, 2014.

While the wage reopener was pending before the arbitration panel, the plaintiffs, each of whom was eligible for retirement because he had completed twenty-five years or more of service, submitted applications to the defendant Meriden Municipal Pension Board (pension board)[1] for retirement benefits, effective in

January, 2015. Although the pension plan requires a firefighter to retire "effective the first day of the month following his sixty-fifth birthday," none of the plaintiffs was required to retire under this provision because they were younger than age sixty-five at the time of their retirements. The pension board approved the plaintiffs' applications, and the plaintiffs retired accordingly.[2]

On February 20, 2015, after the effective dates of the plaintiffs' retirements, the arbitration panel issued its interest arbitration award. Pursuant to § 7-473c (d) (9), the arbitration panel accepted the union's last best offer of an "increase [in] each step for each position on the wage scale in effect on June 30, 2014 by [2 percent]." With respect to the retroactive effect of the wage increase, the arbitration panel accepted the city's last best offer that "[t]he wage increase for 2014–2015 shall go into effect on January 1, 2015." Thus, all employees covered by the collective bargaining agreement received a 2 percent wage increase effective January 1, 2015. The decision of the arbitration panel was "final and binding" on the city and the union pursuant to § 7-473c (d) (10).

Approximately five years later, the plaintiffs filed the present action, alleging that the defendants had breached the collective bargaining agreement by failing to recalculate their pension benefits using the 2 percent wage increase awarded in arbitration and to pay them lost wages for the time period between the date on which the interest arbitration award became retroactively effective and the dates on which each plaintiff retired. By agreement, the matter was tried to the court solely on the basis of the pleadings and the exhibits submitted by the parties, which included the collective bargaining agreement, the pension plan, and the interest arbitration award.[3] The parties agreed that the underlying facts were not in dispute and that the dispositive issues were "purely legal question[s]."

The trial court issued a memorandum of decision, concluding that the defendants had breached the collective bargaining agreement by failing to recalculate the plaintiffs' pension benefits using the retroactive wage increase awarded in arbitration, because the interest arbitration award was final and binding pursuant to § 7-473c (d) (10), and "the decision of the panel with respect to the effective date of the [r]uling is explicit: the 'effective date' is January 1, 2015," at which time the plaintiffs all "were employees of the [c]ity and members of the [u]nion . . . ." With respect to the plaintiffs' lost wages claims, however, the trial court determined that those claims were barred by the two year statute of limitations in General Statutes § 52-596. See General Statutes § 52-596 ("[n]o action for the payment of remuneration for employment payable periodically shall be brought but within two years after the right of action accrues"). The trial court rendered judgment in favor of the plaintiffs with respect to liability only on the breach of contract

claims and in favor of the defendants on the lost wages claims. The defendants filed an appeal with the Appellate Court, and, after additional steps were taken in the trial court to quantify the amount of the plaintiffs' damages and to render a final judgment,[4] this court transferred the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The defendants make two claims on appeal. The first, which they did not raise below, is that the trial court lacked subject matter jurisdiction over this case because the plaintiffs had failed to exhaust their administrative remedies by seeking relief from the pension board before filing the present lawsuit. The defendants' second claim challenges the trial court's resolution of the merits of the breach of contract counts. The defendants argue that the trial court incorrectly determined that they had breached the collective bargaining agreement because, under the express language of the pension plan, which was incorporated by reference into the collective bargaining agreement, pension benefits for any employee who voluntarily retires before the age of sixty-five are calculated on the basis of the amount of wages that the employee actually "was receiving at the time of retirement," rather than the amount the employee would have been receiving at that time under a retroactive wage increase awarded postretirement. According to the defendants, the pension plan provides that retroactive wage increases awarded postretirement are not used to calculate a retiree's pension benefits, unless the employee was forced to retire "due to the age sixty-five . . . retirement rule during contract negotiations where their salary would have been increased prior to retirement had they been allowed to stay . . . ."

We conclude that the plaintiffs were not required to exhaust their administrative remedies because there is no established administrative process pursuant to which they could have obtained relief. We further conclude that the trial court incorrectly determined that the defendants had breached the collective bargaining agreement because the pension plan does not permit the retroactive modification of a retiree's base rate of pay following voluntary retirement, and nothing in the interest arbitration award modified, amended, or terminated this provision. Accordingly, we reverse in part the judgment of the trial court.

I

Although not raised in the trial court, the defendants contend on appeal that the plaintiffs failed to exhaust their administrative remedies because they did not request relief directly from the pension board prior to filing suit.[5] The defendants' exhaustion claim is unpreserved, but we nonetheless address it because it might implicate the subject matter jurisdiction of the trial court. See, e.g., *Garcia* v. *Hartford*, 292 Conn. 334, 339,

972 A.2d 706 (2009). Whether the trial court had subject matter jurisdiction over the present action is a question of law. See, e.g., *Levine* v. *Sterling*, 300 Conn 521, 528, 16 A.3d 664 (2011).

The exhaustion doctrine "protects the courts from becoming unnecessarily burdened with administrative appeals and it ensures the integrity of the agency's role in administering its statutory responsibilities." (Internal quotation marks omitted.) *Stepney, LLC* v. *Fairfield*, 263 Conn. 558, 565, 821 A.2d 725 (2003). We have held that the exhaustion of administrative remedies is required in two circumstances. First, exhaustion is required if a statute, regulation, or contractual provision explicitly requires a party to exhaust his or her administrative remedies before filing an action in the trial court. See, e.g., id., 564 ("[t]he requirement of exhaustion may arise from explicit statutory language" (internal quotation marks omitted)); see also General Statutes § 4-183 (a) (requiring party to exhaust "all administrative remedies available within the agency" and to be "aggrieved by a final decision" before filing "[an] appeal to the Superior Court"). No such explicit exhaustion requirement applies in the present case.

Second, even if the exhaustion requirement is not explicit, a party must exhaust his or her administrative remedies if the statutory, regulatory, or contractual scheme at issue "has [an] established . . . procedure to redress a particular wrong . . . ." (Internal quotation marks omitted.) *Piteau* v. *Board of Education*, 300 Conn. 667, 678, 15 A.3d 1067 (2011). This type of exhaustion applies if there is a comprehensive statutory, regulatory, or contractual scheme that provides the party with a remedy, in which case he or she "must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a . . . procedure." (Internal quotation marks omitted.) Id.; see, e.g., id., 680 (plaintiff alleging that union breached duty of fair representation must first exhaust administrative remedies before state Board of Labor Relations, even though statutory scheme "contains no express exhaustion requirement"); *Johnson* v. *Statewide Grievance Committee*, 248 Conn. 87, 97, 726 A.2d 1154 (1999) ("[a]lthough the grievance procedures enumerated in General Statutes §§ 51-90 through 51-94 and Practice Book § 2-29 et seq. do not expressly require the exhaustion of administrative remedies before a judicial remedy may be sought . . . in light of the comprehensive nature of the administrative scheme, exhaustion of the remedies available thereunder is a jurisdictional prerequisite to judicial relief"), overruled in part on other grounds by *Disciplinary Counsel* v. *Elder*, 325 Conn. 378, 159 A.3d 220 (2017). The defendants contend that an exhaustion requirement is implicit in the terms of the pension plan.

The defendants base their exhaustion argument on

the language in the pension plan that vests the pension board with the power and duty to "determine the eligibility of an [e]mployee and his rights and the rights of the [c]ity under the Special Acts" and to "do all things necessary and proper toward carrying out the purposes for which the [pension] [p]lan is created." These provisions, which manifestly contain no explicit exhaustion requirement, also fall far short of establishing an exhaustion requirement by implication under our case law. Even if we were to assume, without deciding, that the pension board has the power to recalculate a retiree's pension benefits under this provision, there is no established administrative process pursuant to which retirees may seek the recalculation of their pension benefits.[6] In the absence of any such administrative process, we cannot conclude that the plaintiffs bypassed an available administrative remedy that would have provided them with relief. See, e.g., *Levine* v. *Sterling*, 300 Conn. 521, 527, 16 A.3d 664 (2011) (plaintiff "did not fail to exhaust his administrative remedies . . . because there were no administrative remedies available to him"); *Pepler* v. *Torrington*, Superior Court, judicial district of Litchfield, Docket No. LLI-CV-21-6029445-S (May 11, 2022) (spouse of deceased firefighter was not required to exhaust administrative remedies before municipal pension board because pension agreement did "not explicitly define the administrative procedure that an employee or employee's spouse must utilize when claiming pension benefits").[7] See generally *Direct Energy Services, LLC* v. *Public Utilities Regulatory Authority*, 347 Conn. 101, 146, 296 A.3d 795 (2023) ("[t]ypically, courts apply the exhaustion of administrative remedies doctrine when a party has completely bypassed an available administrative process"). In sum, the exhaustion doctrine is inapplicable, and the trial court did not lack subject matter jurisdiction over the plaintiffs' claims.[8]

## II

The defendants claim that the trial court incorrectly determined that they had breached the collective bargaining agreement by failing to recalculate the plaintiffs' pension benefits to reflect the 2 percent wage increase in the interest arbitration award. The contractual terms in dispute comprise provisions of the collective bargaining agreement, the pension plan, and the interest arbitration award, and resolution of the claim on appeal requires us to carefully scrutinize the relevant language of these three documents[9] and the interplay between and among their terms. To begin with, the collective bargaining agreement expressly incorporates by reference the pension plan, which became "a part of [the] agreement . . . ." *Allstate Life Ins. Co.* v. *BFA Ltd. Partnership*, 287 Conn. 307, 315, 948 A.2d 318 (2008); see also *Greene* v. *Waterbury*, 126 Conn. App. 746, 751, 12 A.3d 623 (2011) ("[w]hen a contract expressly incorporates a statutory enactment by reference, that enact-

ment becomes part of a contract for the indicated purposes *just as though the words of that enactment were set out in full in the contract*" (emphasis in original; internal quotation marks omitted)). Benefits under the pension plan are based in part on an employee's wage rate at the time of his or her retirement, which is established by the collective bargaining agreement. The wage rate under the collective bargaining agreement for employees in January, 2015, the time when the plaintiffs retired, was resolved by the final and binding interest arbitration award issued on February 20, 2015, which awarded all employees a 2 percent wage increase. See *Brass City Local, CACP* v. *Waterbury*, 337 Conn. 576, 584, 254 A.3d 866 (2020) ("[u]nlike grievance arbitration, a process that seeks to interpret and apply the rules of an existing contract to determine whether a breach has occurred, interest arbitration is designed to develop the contractual rules that will govern the relationship" (internal quotation marks omitted)).

Ordinarily, a "trial court's factual findings as to whether and by whom a contract has been breached are subject to the clearly erroneous standard of review and, if supported by evidence in the record, are not to be disturbed on appeal." *CCT Communications, Inc.* v. *Zone Telecom, Inc.*, 327 Conn. 114, 133, 172 A.3d 1228 (2017). In the present case, however, the parties agreed at trial that the contractual language is definitive and that no factual dispute exists, and, therefore, the sole issue for judicial determination was whether the plain language of the operative contract required the defendants to recalculate the plaintiffs' pension benefits to account for the 2 percent retroactive wage increase. Under these circumstances, the issue on appeal "is a question of law over which our review is plenary." Id.; see also *Poole* v. *Waterbury*, 266 Conn. 68, 88–89, 831 A.2d 211 (2003).

We first examine the language of the pension plan, which distinguishes between active employees and retired members receiving pension benefits (retirees). Specifically, article I, § 3, defines the term "employees" as "all regular full-time firefighters hired, elected or appointed prior to March 18, 2003 and covered under the [union's] collective bargaining agreement." In contrast, article I, § 4, defines the term "members" in relevant part as "[a]n [e]mployee, who as of December 1, 2003, elected not to participate in the Municipal Employees Pension Plan . . . who has met the participation requirements of [a]rticle VI, [§] 1. . . ."

Article VI, § 1, specifies two different ways in which an employee can become eligible to retire and receive a pension benefit. The first is voluntary in nature: an employee of any age may elect to retire after he has completed twenty-five years or more of service. The second pathway to retirement is automatic or mandatory in nature. The pension plan provides that any

employee with twenty-five years or more of service who has attained the "age 65 shall be retired automatically on a pension by the [c]ity, effective the first day of the month following his sixty-fifth birthday." The plaintiffs in the present case fall into the first category of retirees because they retired voluntarily prior to reaching age sixty-five.

The amount of a normal retirement benefit for all retirees, both voluntary and mandatory, is defined as "a monthly benefit equal to . . . (a) [2.2] percent . . . multiplied by (b) the [b]ase [r]ate of [p]ay a [m]ember was receiving at the time of retirement; multiplied by (c) [y]ears of [s]ervice with the [city's] [f]ire [d]epartment . . . to a maximum of thirty . . . years; plus (d) [50] percent . . . of the [e]moluments as defined in [article I, § 2] that current [m]embers are receiving; divided by (e) [t]welve . . . ." To calculate this amount, one must ascertain an employee's base rate of pay, which is defined in relevant part as "[t]he annual pay as fixed from time to time by the collective bargaining agreement . . . . Base [r]ate of [p]ay shall not include any additional salary including, but not limited to, add pays, overtime, private duty, civil defense pay, holiday pay and education incentive pay."

The pension plan contains three other provisions that can be construed to speak, either directly or indirectly, to the retroactive payment of pension benefits. First, article IX, § 1 (a), which governs the application for pension benefits, provides in relevant part that "[i]n no event will a retroactive benefit payment be made."[10] Second, article VI, § 1 (b), provides in relevant part that the pension benefits of mandatory retirees "shall be based only on the amount of benefit accrued to him as of his date of retirement." Third, article I, § 6 (2), addresses the amount of pension benefits payable to mandatory retirees who are forced to retire under the age sixty-five retirement rule while contract negotiations between the city and the union are ongoing. Pursuant to this provision, "any firefighter who must retire due to the age sixty-five . . . retirement rule during contract negotiations where their salary would have been increased prior to retirement had they been allowed to stay, may have their retirement and any payout retroactively increased by any raises for the time they would have been working prior to retirement (i.e., an employee retired in September and raises are granted for the prior January and July, the firefighter may have such raise as increases for his retirement salary retroactively). This language will be appended to the retirement agreement." No such language appears in the pension plan with respect to retirees who voluntarily retire based on twenty-five years or more of service prior to age sixty-five.

Employee wages for the 2014–2015 contract year were subject to a wage reopener in the collective bar-

gaining agreement, which ultimately was resolved by the interest arbitration award. The arbitration took place in the second half of 2014, and a decision was issued on February 20, 2015. The interest arbitration panel adopted the union's last best offer of a 2 percent wage increase over the city's last best offer of a 1.75 percent wage increase, reasoning that the difference in "gross wages" between the two offers amounted to only an average of "an additional $212.03 per year per bargaining unit member or a weekly increase over the [c]ity's last best offer of $4.08 [per] week per employee."

With respect to the effective date of the wage increase, the arbitration panel accepted the city's last best offer that "[t]he wage increase for 2014–2015 . . . go into effect on January 1, 2015." The panel reasoned that the city's "financial pressures, particularly rising benefit cost," and its "low wealth ranking . . . make the January 1, 2015 implementation date appropriate." The panel observed that, under the interest arbitration award, "firefighters will see an immediate salary increase of 2 [percent], a modest retroactive payment to January 1, 2015, and an overall increase in their base salary of 2 [percent]." The arbitration panel did not discuss the impact that a 2 percent wage increase would have on the calculation of pension benefits for firefighters who retired while contract negotiations between the city and the union were ongoing.

The parties agree that the interest arbitration award is final and binding under § 7-473c (d) (10), but they disagree whether its retroactive effect requires the defendants to recalculate the amount of the plaintiffs' pension benefits. The defendants argue that the 2 percent wage increase applied only to active employees, not to former employees who voluntarily retired before the issuance of the interest arbitration award. In support of this claim, the defendants point out that, under article VI, § 2 (b), of the pension plan, a retiree's normal pension benefit is calculated using "the [b]ase [r]ate of [p]ay a [m]ember *was receiving at the time of retirement*," and the plaintiffs were not receiving, and in fact never received, the 2 percent wage increase at the time of their respective retirements. (Emphasis added.) Additionally, the defendants argue that article I, § 6 (2), of the pension plan permits a retroactive wage increase to result in a retroactive increase in pension benefits in only one limited circumstance—when an employee is forced to retire due to the age sixty-five retirement rule while contract negotiations between the city and the union are ongoing. The plaintiffs, as voluntary retirees, were not forced to retire under the age sixty-five retirement rule, and, according to the defendants, this means that they are not entitled to a retroactive increase in their pension benefits.

The plaintiffs contend that the plain language of the operative contract requires the opposite result. Their

argument rests on the fact that pension benefits are calculated using an employee's "base rate of pay" at the time of retirement, and article I, § 6 (1), of the pension plan defines the base rate of pay in relevant part as "[t]he annual pay *as fixed from time to time by the collective bargaining agreement* . . . ." (Emphasis added.) Because the interest arbitration award increased the plaintiffs' annual pay under the collective bargaining agreement, retroactive to January 1, 2015, before the plaintiffs' retirements, they argue that their pension benefits must be recalculated to reflect the wage increase. According to the plaintiffs, the defendants' reliance on article I, § 6 (2), of the pension plan is misplaced because that provision is not an exception to a rule prohibiting pension recalculation to reflect postretirement retroactive wage increases but, rather, is intended only to clarify the language in article VI, § 1 (b) providing that the pension for those retiring at age sixty-five "shall be based only on the amount of benefit accrued to him as of his date of retirement"—which, according to the plaintiffs—"standing alone seemingly would have precluded any pension adjustment because the mandatory retiree's benefits had to be based 'only' on the 'benefit accrued' as of retirement . . . not the traditional pension calculation that is governed by '[b]ase [r]ate of [p]ay.' " (Citation omitted.)

In our view, these contractual provisions provide no definitive answer to the issue presented. It is clear from the plain language of the operative contract that the 2 percent wage increase retroactively applies to *employees* earning *wages*, but it is not clear whether the increase retroactively applies to *voluntary retirees* receiving *pension benefits*. On the one hand, as the plaintiffs argue, they were employees on the date that the wage increase became retroactively effective, January 1, 2015, and the pension plan expressly provides that the base rate of pay used to calculate monthly pension benefits is based on "[t]he annual pay as fixed from time to time by the collective bargaining agreement . . . ." Given that the interest arbitration award increased their base rates of pay by 2 percent under the collective bargaining agreement, and that the increase was retroactively effective at a time when the plaintiffs were still employees, it would be reasonable to conclude that the plaintiffs' monthly pension benefits should be recalculated to reflect the wage increase.

On the other hand, as the defendants argue, pension benefits are calculated on the basis of the base rate of pay that an employee "was receiving at the time of retirement," and the plaintiffs were not receiving the 2 percent wage increase at the time of their respective retirements. The pension plan does not provide that the benefits are calculated on the basis of the base rate of pay that an employee was entitled to receive or should have been receiving at the time of retirement. And, significantly, the pension plan specifies only one

circumstance in which a retroactive pension benefit will be awarded, namely, when an employee is forced to retire due to the mandatory age sixty-five retirement rule at a time when contract negotiations are ongoing.[11] Because the plaintiffs' retirements were voluntary instead of mandatory, they cannot claim an entitlement to a retroactive benefit under this provision. Thus, the defendants also offer a reasonable interpretation of the operative contract leading to the conclusion that the plaintiffs' monthly pension benefits may not be recalculated to reflect the wage increase.

As it relates to the specific issue in dispute, then, the language of the operative contract is ambiguous because it is susceptible to more than one reasonable interpretation. See, e.g., *Cruz* v. *Visual Perceptions, LLC*, 311 Conn. 93, 103, 84 A.3d 828 (2014) ("[A] contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Citation omitted; internal quotation marks omitted.)). "When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact . . . ." (Internal quotation marks omitted.) Id., 101. To resolve an ambiguity in a contractual agreement, the trial court typically will consider extrinsic evidence of the contracting parties' intent, such as "the conduct of the parties"; *Poole* v. *Waterbury*, supra, 266 Conn. 97; the contract's "drafting history"; *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, 259 Conn. 527, 546 n.17, 791 A.2d 489 (2002); and the contracting parties' past practices and negotiations. See, e.g., *Manville Forest Products Corp.* v. *United Paperworkers International Union, AFL-CIO*, 831 F.2d 72, 76 (5th Cir. 1987) ("the precedents clearly support using past practice and negotiating history to resolve ambiguities and gaps in written collective bargaining agreements").

In the present case, no extrinsic evidence of the contracting parties' intent was presented in the trial court. Instead, the parties agreed that the relevant contract provisions could be construed as a matter of law without reference to extrinsic evidence. The trial court, in turn, determined as a matter of law that the defendants had breached the operative contract on the basis of the contract's plain and definitive language and the law governing the final and binding effect of interest arbitration awards. In sum, as a result of the way that the case was tried by the parties and decided by the trial court, the issue requiring resolution has been cast as "a question of law . . . [that] may be redetermined independently by this court on appeal." *Kraemer Bros., Inc.* v. *United States Fire Ins. Co.*, 89 Wis. 2d 555, 562, 278 N.W.2d 857 (1979); see also *Mervin* v. *Magney Construction Co.*, 416 N.W.2d 121, 123–24 (Minn. 1987) (if contract is ambiguous and "there is no extrinsic evidence . . . bearing on the meaning of" ambiguity, then

construction and application of contract is "properly treated . . . as a question of law"); 11 R. Lord, Williston on Contracts (4th Ed. 1999) § 30:7, pp. 91–92 ("in the absence of any relevant extrinsic evidence, any ambiguity in a written contract is to be resolved by the court as a matter of law").

We resolve the ambiguity in the operative contract in accordance with general principles of contract construction, without reference to extrinsic evidence of intent.[12] It is well established that, "[w]hen interpreting a contract, we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result." (Internal quotation marks omitted.) *R.T. Vanderbilt Co.* v. *Continental Casualty Co.*, 273 Conn. 448, 462, 870 A.2d 1048 (2005). "Parties generally do not insert meaningless provisions in their agreements and therefore every provision must be given effect if reasonably possible." (Internal quotation marks omitted.) *Mack Financial Corp.* v. *Crossley*, 209 Conn. 163, 168–69, 550 A.2d 303 (1988); see also *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 674, 791 A.2d 546 (2002); 2 Restatement (Second), Contracts § 203 (a), pp. 92–93 (1981). Our construction of the operative contract also is informed by the doctrine of expressio unius est exclusio alterius, meaning "the expression of one thing is the exclusion of another . . . ." (Internal quotation marks omitted.) *Stratford Police Dept.* v. *Board of Firearms Permit Examiners*, 343 Conn. 62, 74, 272 A.3d 639 (2022); see also *Biro* v. *Matz*, 132 Conn. App. 272, 282, 33 A.3d 742 (2011) ("[l]ong a staple of our statutory interpretation, this court also has applied the principle [of expressio unius est exclusio alterius] to contractual agreements").

On balance, we conclude that the defendants' construction of the operative contract is the most reasonable one because it avoids rendering article I, § 6 (2), of the pension plan superfluous and results in a more harmonious construction of the other relevant contractual provisions. As we previously explained, article I, § 6 (2), provides in relevant part that employees forced to retire due to the age sixty-five retirement rule "during contract negotiations where their salary would have been increased prior to retirement had they been allowed to stay, may have their retirement and any payout retroactively increased by any raises for the time they would have been working prior to retirement (i.e., an employee retired in September and raises are granted for the prior January and July, the firefighter may have such raise as increases for his retirement salary retroactively). . . ." This provision would be unnecessary and perhaps altogether meaningless if all employees who retired during contract negotiations between the city and the union (both mandatory and voluntary retirees) were entitled to a retroactive increase in their pension benefits to reflect a retroactive wage

increase for hours worked prior to retirement. We are persuaded that, by specifying that only one category of retirees, namely, mandatory retirees, is entitled to a retroactive adjustment of pension benefits following a negotiated wage increase, the pension plan implicitly excludes the other category of retirees, voluntary retirees, from receiving the same benefit.

Our conclusion that the pension plan does not permit the recalculation of pension benefits for voluntary retirees following a negotiated wage increase with retroactive effect is bolstered by article IX, § 1 (a), of the plan, which provides in relevant part that "[i]n no event will a retroactive benefit payment be made," and article VI, § 2 (b), of the plan, which provides that a retiree's base rate of pay is limited to the amount "a [m]ember was receiving at the time of retirement . . . ." Reading these contractual provisions together, as we are required to do, we conclude that the defendants did not breach the operative contract by failing to recalculate the plaintiffs' pension benefits to reflect the retroactive wage increase in the interest arbitration award.

The plaintiffs contend that the reference to mandatory retirees in article I, § 6 (2), was not intended to exclude by implication voluntary retirees from receiving the benefit of a retroactive negotiated wage increase but, instead, is a clarification of the final sentence in article VI, § 1 (b), which provides that the pension benefits of a mandatory retiree "shall be based *only* on the amount of benefit accrued to him as of his date of retirement." (Emphasis added.) Essentially, the plaintiffs argue that article I, § 6 (2), is necessary because, otherwise, the pension benefits of a mandatory retiree would be limited to the base rate of pay that the mandatory retiree was receiving as of the date of his retirement, even if ongoing contract negotiations resulted in a retroactive wage increase after retirement. This argument is unpersuasive because, under the standard pension calculation applicable to both mandatory and voluntary retirees, the calculation of pension benefits already is limited to the base rate of pay a retiree "*was receiving at the time of retirement* . . . ." (Emphasis added.) Thus, the amount of a retiree's base rate of pay is constrained by the temporal qualification confining it to the wages the retiree "was receiving at the time of retirement," regardless of whether the nature of the retirement was voluntary or mandatory. Although an *employee's* base rate of pay may change "from time to time [under] the collective bargaining agreement," a *retiree's* base rate of pay is fixed at one precise point in time—the date of retirement. Article I, § 6 (2), is therefore necessary to entitle mandatory retirees to a pension recalculation reflecting a retroactive wage increase; in the absence of such a provision, they would be treated the same as other retirees under the pension plan and would have no right to have their pension benefits recalculated to reflect a retroactive wage

increase granted postretirement.

The plaintiffs also argue that our construction of the operative contract would render the final sentence in article VI, § 1 (b), superfluous because, if the standard pension calculation generally is limited to the base rate of pay a retiree was receiving at the time of retirement, then there would be no need for a separate provision limiting the benefits of a mandatory retiree to "the amount of benefit accrued to him as of his date of retirement." The plaintiffs' argument is not without some force but overlooks that this particular provision refers to the total "amount of benefit accrued," not solely base rate of pay. The broader reference reflects the fact that the total amount of a pension benefit is not calculated solely on the basis of a retiree's base rate of pay, but also is premised on other factors, such as "[e]moluments as defined in [article I, § 2, of the pension plan] that *current [m]embers are receiving . . . .*" (Emphasis added.) Emoluments are defined in article I, § 2, as "longevity payments, holiday pay, life insurance and health insurance minus cost share at the value afforded to current employees year to year by contract for as long as these items remain in the collective bargaining agreement. Emoluments do not include educational bonuses/incentive pay, tuition reimbursements and the like or other items not agreed to by the City as an [e]molument." Thus, the final sentence of article VI, § 1 (b), can be given independent meaning, apart from the subject of base rate of pay, by construing it to limit the amount of emoluments that a mandatory retiree can receive to those that have accrued to him as of the date of retirement.

The plaintiffs further claim that fixing a retiree's base rate of pay as of the date of retirement yields an absurd result in light of the wage reopener in the collective bargaining agreement. They posit that the contracting parties could not have intended to reopen the collective bargaining agreement to negotiate a change in wage rates for the final contract year without also giving retirees who voluntarily retire during contract negotiations the benefit of a subsequent wage increase by recalculating their pension benefits. This claim lacks merit because it is not irrational for the contracting parties to negotiate an agreement that treats the wages of employees differently from the pension benefits of retirees or a particular class of retirees (e.g., voluntary retirees). See, e.g., *Allied Chemical & Alkali Workers of America, Local Union No. 1* v. *Pittsburgh Plate Glass Co.*, 404 U.S. 157, 173, 92 S. Ct. 383, 30 L. Ed. 2d 341 (1971) (recognizing that employees and retirees "do not share a [sufficiently broad] community of interests" and that "union representatives on occasion might see fit to bargain for improved wages or other conditions favoring active employees at the expense of retirees' benefits"); *Marcatante* v. *Chicago*, 657 F.3d 433, 435 (7th Cir. 2011) ("after two years of negotiations, the

[c]ity and unions agreed to make raises retroactive . . . but only for current employees, employees laid off with recall rights, and seasonal employees eligible for rehire, not for . . . retirees"). We cannot say that it would be absurd for the contracting parties to provide employees with the ability to seek a wage increase through the wage reopener process, while at the same time limiting the beneficial effect of any retroactive increase obtained in that process to those retirees who are forced to retire during ongoing contract negotiations due to the age sixty-five retirement rule.

Our conclusion is not in any way inconsistent with the interest arbitration award, which did not modify, amend, or terminate the operative contract to require the recalculation of retiree pension benefits. The 2 percent increase in the interest arbitration award, as well as the arbitration panel's consideration of the statutory factors enumerated in § 7-473c (d) (9), was limited to the wages payable to employees. No mention was made of retirees, voluntary or otherwise, or the method used to calculate pension benefits. In the absence of extrinsic evidence of intent, we cannot conclude that the interest arbitration award modified the collective bargaining agreement to require the recalculation of pension benefits for retirees, like the plaintiffs, who voluntarily retired during ongoing contract negotiations. Accordingly, on this record, the plaintiffs' breach of contract claims fail as a matter of law.

The judgment is reversed as to the plaintiffs' breach of contract claims and the case is remanded with direction to render judgment in favor of the defendants on those claims; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.

[1] We hereinafter refer to the city and the pension board, collectively, as the defendants, unless the context requires specification.

[2] Stiegler's and Bergeron's retirements were effective on January 4, 2015, when they were fifty-four and fifty-six years old, respectively. Grant's retirement was effective on January 15, 2015, when he was sixty years old.

[3] No witnesses testified, and no extrinsic evidence of the contracting parties' intent was offered or admitted.

[4] The trial court invited the parties to stipulate as to the amount of the plaintiffs' damages, but the defendants filed their appeal before any agreement was reached. After the plaintiffs moved to dismiss the defendants' appeal for lack of a final judgment, the parties stipulated that, for the time period between January 4, 2015, and August 30, 2022, the plaintiffs were entitled to the following damages in recalculated pension benefits: (1) $7693.91 for Stiegler; (2) $7449.75 for Bergeron; and (3) $7417.77 for Grant. The trial court rectified the record to reflect the joint stipulation and rendered judgment accordingly.

[5] The defendants do not contend that the plaintiffs were required to exhaust their administrative remedies directly under the terms of the collective bargaining agreement. That claim is precluded by our decision in *Garcia* v. *Hartford*, 292 Conn. 334, 336–37, 343, 972 A.2d 706 (2009), which held that employee grievance procedures in collective bargaining agreements do not apply to individuals who have retired from employment. As in *Garcia*, the grievance procedures in the collective bargaining agreement at issue are limited to employees, and, therefore, the plaintiffs were not required to exhaust those administrative remedies.

[6] By way of contrast, there is an established administrative process pursuant to which an employee eligible to receive pension benefits must apply

to the pension board for those benefits. See footnote 10 of this opinion.

[7] The defendants claim that *Pepler* is distinguishable because, in that case, the Torrington Police and Fire Pension Board did not have adjudicative authority to determine the rights of members of the relevant pension plan, whereas, in the present case, the pension board "has been expressly granted the authority to determine the rights of the parties under the pension plan and . . . to effectuate the purposes of the plan." We reject this claim for two reasons. First, the pension board in the present case is not expressly granted authority to determine anything more than the pension eligibility of employees. Second, in *Pepler*, the trial court determined that exhaustion was not required because "the parties' [a]greement [did] not mention an administrative remedy in the [b]oard," delineate "*any* administrative procedure [by] which the plaintiff [would] be entitled to due process," or describe how the plaintiff could "make a claim to the [b]oard." (Emphasis in original.) *Pepler* v. *Torrington*, supra, Docket No. LLI-CV-21-6029445-S. The same is true in the present case. The pension plan does not mention the availability of an administrative remedy or describe the process by which the plaintiffs could pursue that remedy. As a result, the exhaustion doctrine does not apply.

[8] In light of our conclusion, we do not address the plaintiffs' alternative claim that the exhaustion of their administrative remedies would have been futile. See, e.g., *Stepney*, *LLC* v. *Fairfield*, supra, 263 Conn. 565 (party was not required to exhaust administrative remedies "when recourse to the . . . remedy would be futile or inadequate" (internal quotation marks omitted)).

[9] We hereinafter refer to these three documents collectively as the operative contract.

[10] Article IX, § 1 (a), provides that "[a] retirement benefit must be applied for in writing to the [pension] [b]oard on a form and in a manner prescribed by the [pension] [b]oard. Such application shall be duly attested, and it shall set forth the date that the [m]ember desires to be retired, but such retirement date shall be subsequent to the date of filing thereof, and not less than sixty . . . days subsequent to the date of filing. In no event will a retroactive benefit payment be made."

[11] Specifically, article I, § 6 (2), of the pension plan provides in relevant part that mandatory retirees "may have their retirement and any payout retroactively increased by any raises for the time they would have been working prior to retirement . . . ."

[12] In *Awdziewicz* v. *Meriden*, 317 Conn. 122, 129–30, 115 A.3d 1084 (2015), and *Kiewlen* v. *Meriden*, 317 Conn. 139, 149, 115 A.3d 1095 (2015), we held that a municipal pension plan adopted by city charter or ordinance should be construed consistently with the principles of statutory construction. The pension plan in the present case was incorporated by reference into the collective bargaining agreement, and we have characterized it as part of the operative contract. As far as we can discern, it makes no practical difference in this case whether the pension plan is governed by rules of statutory construction or contract construction. Statutes, like contracts, must be construed reasonably, holistically, and harmoniously, and "[e]very word and phrase is presumed to have meaning . . . so as [not] to render certain words and phrases surplusage." (Internal quotation marks omitted.) *Vibert* v. *Board of Education*, 260 Conn. 167, 176, 793 A.2d 1076 (2002). These basic principles of construction are the primary ones guiding our analysis.

---