# DONNA DUSO ET AL. *v.* TOWN OF GROTON
## (SC 21082)

McDonald, D'Auria, Ecker, Dannehy and Elgo, Js.

*Syllabus*

The plaintiffs, retired law enforcement officers formerly employed by the defendant town, sought a judgment declaring that, pursuant to a pension agreement between the town and the union that had represented them during their employment, they were entitled to the same contributions to their health savings accounts (HSAs) that the town makes to the HSAs of police officers currently employed by the town (active police officers). The provision of the pension agreement addressing the scope of health insurance coverage for retirees provided that retirees are entitled to the "nature and scope of coverages, including but not limited to deductibles . . . in effect for active [p]olice [o]fficers . . . ." The pension agreement was incorporated into a collective bargaining agreement, executed after all of the plaintiffs retired, pursuant to which the town changed its group health insurance plan to a high deductible plan with an annual deductible of $2000 for single person coverage and $4000 for two or more person coverage. The collective bargaining agreement also requires the town to contribute 50 percent of the cost of an active police officer's annual deductible to the active police officer's HSA. The trial court ruled in favor of the plaintiffs, and the Appellate Court upheld the trial court's decision, concluding that the pension agreement required the town to make the same HSA contributions to the plaintiffs' HSAs that it makes to the HSAs of active police officers. On the granting of certification, the defendant appealed to this court. *Held*:

Duso *v.* Groton

The Appellate Court incorrectly concluded that the pension agreement enti-
tled the plaintiffs to the same HSA contributions as those made by the town
to the HSAs of active police officers, and, accordingly, this court reversed
the Appellate Court's judgment, remanded the case, and directed that the
trial court render judgment for the town.

The plain and unambiguous meaning of the terms "coverages" and "deduct-
ibles," as well as the general nature of HSAs, led this court to conclude that
HSA contributions did not qualify as insurance coverage or a deductible
under the pension agreement.

Whereas insurance coverage refers to the risk an insurer agrees to bear,
subject to the defined terms and limits set forth in an insurance policy, a
contribution to an HSA is not a term of the health insurance policy and
does not otherwise expand, limit, or define any insured risks.

Moreover, unlike a deductible, which is a fixed and structural part of an
insurance policy that defines the threshold point at which insurance cover-
age begins, an HSA is a separate funding mechanism outside of the insurance
policy, such that the existence of an HSA does not change the deductible
required by the terms of the insurance policy or satisfy the deductible by
virtue of HSA's existence or availability, especially when HSA funds can be
used for purposes other than satisfying an insured's deductible.

Even if this court assumed that the relevant language of the pension agree-
ment was ambiguous, extrinsic evidence demonstrating that the town and
the union, as the contracting parties, did not intend for the HSA contribution
payments to constitute coverage or a deductible within the meaning of the
pension agreement further supported the conclusion that the plaintiffs were
not entitled to the HSA contributions that active police officers receive from
the town.

(*One justice dissenting*)

Argued September 15—officially released December 9, 2025

*Procedural History*

Action seeking, inter alia, a judgment declaring the
scope of the defendant's obligations under a pension
agreement to make contributions to the plaintiffs'
health savings accounts, and for other relief, brought
to the Superior Court in the judicial district of New
London, where the court, *Graff, J.*, adopted the parties'
joint stipulation of facts and rendered judgment for
the plaintiffs; thereafter, the court, *Graff, J.*, awarded
compensatory damages to the plaintiffs, and the defen-
dant appealed and the plaintiffs cross appealed to the

Duso *v.* Groton

Appellate Court, *Bright, C. J.*, and *Alvord* and *Clark, Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Reversed*; *judgment directed.*

*Kristi D. Kelly*, with whom, on the brief, was *Kyle J. Zrenda*, for the appellant (defendant).

*Jacques J. Parenteau*, for the appellees (plaintiffs).

*Opinion*

DANNEHY, J. The question we must decide in the present appeal is whether the plaintiffs, retired police officers of the town of Groton, are entitled under a 2008 pension agreement to receive health savings account (HSA) contributions from the town, like the town now pays to its active police officers under a successive collective bargaining agreement, which incorporates the same 2008 pension agreement. The Appellate Court concluded that the plaintiffs are, holding that the provision of the 2008 pension agreement entitling retirees to the "nature and scope of coverages, including but not limited to deductibles . . . in effect for active [p]olice [o]fficers" extended to the HSA contributions that are paid to active police officers. See *Duso* v. *Groton*, 228 Conn. App. 390, 423–24, 325 A.3d 295 (2024). We granted the town's petition for certification to appeal and now reverse the judgment of the Appellate Court.[1]

I

The underlying facts of this case are undisputed.[2] The plaintiffs, Donna Duso, David Menard, James Gauthier,

---

[1] We granted the town's petition limited to the following issues: (1) "Did the Appellate Court correctly determine that the nature and scope of health insurance coverage for the plaintiffs, who are retired employees of the [town], included [HSA] contributions that are made to the accounts of the [town's] current employees under the applicable collective bargaining agreement?" And (2) "[d]id the Appellate Court properly uphold the trial court's damages award?" *Duso* v. *Groton*, 350 Conn. 933, 327 A.3d 385 (2024).

[2] In lieu of a court trial, the parties submitted a joint stipulation of facts and various exhibits to the trial court. The trial court, in turn, adopted all the stipulated facts as its findings of facts.

Duso *v.* Groton

Kathleen Doyle, and Dexter Herron, were all employees of the defendant, the town of Groton, and all retired from the town at different times between 2012 and 2016. Duso served as an animal control officer during most of her tenure with the town, and Menard, Gauthier, Doyle, and Herron served as police officers. At all relevant times during their employment, the plaintiffs were represented by the Groton Police Union, Local 3428 of Council 15, or Council 4 as successor in interest to Council 15, of AFSCME, AFL-CIO (union), as their duly elected bargaining representative.[3]

During the course of the plaintiffs' employment, the town and the union collectively bargained the terms and conditions of the plaintiffs' employment in accordance with the Municipal Employee Relations Act, General Statutes § 7-467 et seq., resulting in a series of written collective bargaining agreements every few years, each typically covering a time period from two to four years, depending on the agreement reached between the town and the union. Under the pertinent agreements, the plaintiffs were entitled to enroll in the town's group health insurance plans. All five plaintiffs participated in a plan, which, during the time of their employment, was either a preferred provider option (PPO) plan as the primary option, or a high deductible health plan (HDHP) as an alternative option. At all relevant times, the town has provided self-insured health plans, with Anthem Blue Cross/Blue Shield (Anthem) serving as the benefits administrator under an administrative services contract with the town.

---

[3] The union is not a party to this action. The town argued before the trial court and the Appellate Court that the union was a necessary and indispensable party to this action. Both courts disagreed. See *Duso* v. *Groton*, supra, 228 Conn. App. 410–11. That issue is not before us in the present appeal, and we express no view on the merits of that question. See, e.g., *Rodriguez* v. *Kaiaffa, LLC*, 337 Conn. 248, 275, 253 A.3d 13 (2020) ("the failure to give notice to or to join an indispensable party does not impact the court's subject matter jurisdiction" (internal quotation marks omitted)).

Duso *v.* Groton

At the time that each plaintiff retired from his or her employment with the town, the operative collective bargaining agreements incorporated by reference the same collectively bargained pension agreement,[4] "An Agreement Between the Town of Groton and the Groton Police Union, Local 3428 of Council 15 AFSCME Concerning Pensions August 1, 2008–June 30, 2012" (2008 pension agreement).[5] The 2008 pension agreement sets forth, among other things, the terms and conditions under which retirees may elect to continue health insurance coverage into retirement under the town's group health insurance plans.

Section 16 of the 2008 pension agreement specifically addresses the scope of health insurance coverage for retirees under the age of sixty-five, which includes all the plaintiffs. Section 16 (C) provides in relevant part: "The nature and scope of coverages, including but not limited to deductibles, co-insurance, co-pays and/or limits, shall be those in effect for active Police Officers, as those coverages, including but not limited to deductibles, co-insurance, co-pays and/or limits, may change from time to time, except dental which, if provided to active Police Officers, shall be limited for Retirees, Spouses and/or Dependents, where applicable, to basic coverage . . . as provided to active Police Officers. Said coverages shall be available until such time as the Retiree, Spouse and/or Dependents become eligible for

_____

[4] Because the plaintiffs retired from their employment with the town at different times, different collective bargaining agreements were in effect at the time of their respective retirements. The agreement between the town and the Groton Police Union, Local 3428, AFSCME, AFL-CIO, for the period July 1, 2011, through June 30, 2014, was in effect when Gauthier and Menard retired, and the agreement between the town and the Groton Police Union, Local 3428, AFSCME, AFL-CIO, for the period July 1, 2014, through June 30, 2016, was in effect when Duso, Doyle, and Herron retired.

[5] The parties stipulated that "[a]ll the plaintiffs are 'police officers' as defined by § 1 of the [2008] pension agreement and are 'regular employees' to which the terms and conditions of the [2008] pension agreement apply, as set forth in § 3 of the [2008] pension agreement."

Duso *v.* Groton

Medicare or reach age [sixty-five], whichever is earlier.'' (Footnote omitted.) Upon retirement, the plaintiffs each elected to continue coverage under the town's PPO plan that was offered to active employees.

Following the plaintiffs' retirements, the town and the union entered into a successive collective bargaining agreement for the period July 1, 2016, through June 30, 2020 (2016 CBA), regarding the rates of pay, wages, hours of employment, and other conditions of employment for all active police officers. Like earlier collective bargaining agreements between the town and the union, the 2008 pension agreement was expressly incorporated by reference into the 2016 CBA and made an attachment to that agreement.

Pursuant to article 22.1 of the 2016 CBA, the town and the union agreed that, in 2018, the town's group health insurance plan for active police officers would be changed from a PPO plan to an HDHP. Active police officers enrolled in the town's health insurance were moved from the PPO plan to the HDHP effective January 1, 2018, and retirees, including the plaintiffs, were required to enroll in the HDHP no later than July 1, 2018. All of the plaintiffs enrolled in the HDHP effective July 1, 2018.

In conjunction with changing from a PPO plan to an HDHP, the 2016 CBA required active police officers to open and maintain HSAs.[6] The 2016 CBA also provided that active police officers would receive from the town a contribution to their HSAs in the amount equal to 50 percent of each active police officer's annual in-network

---

[6] As explained in greater detail in this opinion, an HSA is a creature of federal law originating under the Medicare Prescription Drug, Improvement, and Modernization Act of 2003. See Pub. L. No. 108-173, § 1201, 117 Stat. 2066, 2469 (2003). HSAs are tax advantaged savings accounts created to help eligible individuals pay for qualified medical expenses. See 26 U.S.C. § 223 (d) (1) and (f) (2018). The parties stipulated that retirees were not required to open and maintain an HSA but had the option to do so.

Duso *v.* Groton

deductible. The 2016 CBA delineated that the in-network deductibles are $2000 for single person coverage and $4000 for two person or family coverage. Thus, active police officers electing single person coverage would receive from the town a $1000 contribution to their HSA each year on a nontax basis and active police officers purchasing two person or family coverage would receive a $2000 contribution to their HSA on a nontax basis. For those active police officers legally ineligible to open an HSA, the town agreed, in the 2016 CBA, to provide them with a taxable payment in the same amount. The 2016 CBA did not contain any limitation on how active police officers were permitted to use the town's contributions to their HSAs or payments made by the town in lieu of such contributions. Commencing July 1, 2018, and each year since, active police officers enrolled in the HDHP have received those payments. It is undisputed that the plaintiffs have not received them.

In November, 2018, the plaintiffs commenced a declaratory judgment action in the Superior Court asking that the court declare that, under the terms of the 2008 pension agreement, the plaintiffs are not receiving the "nature and scope of coverages . . . in effect for active Police Officers" and that the town is required to "contribute 50% of the deductible amount to [the plaintiffs'] HSA accounts on a pretax or taxable basis based on [the plaintiffs'] eligibility to maintain a HSA account." (Internal quotation marks omitted.) In lieu of a court trial, the parties submitted a joint stipulation of facts and various exhibits to the trial court. The trial court ruled in favor of the plaintiffs, finding that the payment equal to 50 percent of the deductible was part of the "essence of the deductible" and that the plaintiffs, therefore, were entitled under the 2008 pension agreement to the same HSA payments as active police officers. Following briefing by the parties, the court

Duso *v.* Groton

ordered the town to pay damages to the plaintiffs totaling $36,000.[7] The court declined to award any attorney's fees.

The town appealed to the Appellate Court. The Appellate Court agreed with the trial court that the 2008 pension agreement precluded the town from contributing an amount equal to 50 percent of the deductible to active police officers' HSAs without making the same contribution to the plaintiffs' HSAs. *Duso* v. *Groton*, supra, 228 Conn. App. 414. It reasoned that, because active police officers, in effect, are "obligated to pay only $1000 for individuals or $2000 for families before the [town] . . . begins paying their claims," the active police officers' deductibles "are less than those of the plaintiffs." Id. The court rejected the town's claim that the term "deductible" under the 2008 pension agreement "does not include the source from which the deductible is paid." (Internal quotation marks omitted.) Id., 414, 416. The court also rejected the town's claim that the trial court erred in calculating the damages owed to the plaintiffs. Id., 424.

The town subsequently filed a petition for certification to appeal. We granted its petition, and this appeal followed.

II

The town claims that the Appellate Court erred in concluding that the 2008 pension agreement entitled the plaintiffs to the same HSA contributions as active police officers. It argues that the court incorrectly determined that HSA contributions qualify as insurance "coverages," and, more specifically, that they qualify as "deductibles" under the 2008 pension agreement. We agree.

---

[7] The trial court concluded that the town was liable to Duso in the amount of $5000, Gauthier in the amount of $10,000, Menard in the amount of $6000, Doyle in the amount of $5000, and Herron in the amount of $10,000.

Duso *v.* Groton

## A

This court interprets collective bargaining agreements according to ordinary principles of contract law. See, e.g., *Gallagher* v. *Fairfield*, 339 Conn. 801, 807, 262 A.3d 742 (2021); *Poole* v. *Waterbury*, 266 Conn. 68, 87–88, 831 A.2d 211 (2003). Under these well established principles, "[a] contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [When] the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity [when] the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *Poole* v. *Waterbury*, supra, 87–88. "[T]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) *Honulik* v. *Greenwich*, 293 Conn. 698, 710–11, 980 A.2d 880 (2009).

"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [when] there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Garcia* v. *Hartford*, 292 Conn. 334, 341, 972 A.2d 706 (2009). "When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract." *Poole* v. *Waterbury*, supra, 266 Conn. 89.

At the time that each plaintiff retired, he or she was covered by a collective bargaining agreement that incor-

Duso *v.* Groton

porated the 2008 pension agreement by reference.[8] The parties do not dispute that the plaintiffs are third-party beneficiaries of the 2008 pension agreement. Section 16 (C) of the 2008 pension agreement, which delineates the nature and scope of the health insurance coverage to which the plaintiffs are entitled, provides in relevant part that "[t]he nature and scope of coverages, including but not limited to deductibles, co-insurance, co-pays and/or limits, shall be those in effect for active Police Officers, as those coverages, including but not limited to deductibles, co-insurance, co-pays and/or limits, may change from time to time . . . ."

To determine the "[t]he nature and scope of coverages" to which the plaintiffs are entitled, we must necessarily examine the coverages "in effect for active Police Officers . . . ." At the time the plaintiffs brought the underlying declaratory judgment action, article 22.1 (A) (2) of the 2016 CBA described the health coverages to which active police officers at that time were entitled, as well as other terms and conditions. It provides in relevant part: "[T]he Town shall provide current full time employees and dependents with the following health coverage (inclusive of vision coverage) . . .

"A High Deductible Health Plan (HDHP), or substantially similar plan, with shared in network ($2000/$4000) and out of network ($5000/$6850) deductibles; medical cost of care edits and utilization management; prescription rider with mandatory generic substitution, cost of care edits and utilization management.

"After the deductible, 0% co-insurance for in network, 80%/20% co-insurance for out of network, medical cost of care edits and utilization management, and the following, or substantially similar, prescription drug rider with mandatory generic substitution, cost of care edits

[8] See footnote 4 of this opinion.

Duso *v.* Groton

and utilization management, no annual limit and the following co-pays:

Retail (30 day supply):
$10/generic
$25/brand
$40/non listed brand

Mail Order (90 day supply):
$10/generic
$50/brand
$80/non-preferred brand

"Employees are required to open and maintain a Health Savings Account . . . in conjunction with the HDHP.

"The Town will fund fifty percent (50%) of the annual in-network deductible on a non-tax basis in each of the plan years 2017–2018, 2018–2019 and 2019–2020. The Town will make its contribution in one installment on or about July 1.

"Employees who are legally ineligible to open a HSA, but who enroll in the HDHP, will receive fifty percent (50%) of the annual in-network deductible on a taxable basis."

Article 22.1 (A) (2) of the 2016 CBA concludes with the following italicized proviso: "*NOTE: The Town's fifty percent (50%) contribution toward the funding of the HDHP plan is not an element of the underlying insurance plan, but rather relates to the manner in which the deductible shall be funded for active employees. The Town shall have no obligation to fund any portion of the HDHP deductible for retirees or other individuals upon their separation from employment. Under 65 retirees must enroll in the HDHP as of July 1, 2017, or as soon as legally possible following the*

Duso *v.* Groton

*ratification of this 2016–2020 agreement, but in no case later than July 1, 2018*."[9] (Emphasis in original.)

The plaintiffs maintain that the town failed to provide them with the same deductible as active police officers because the town agreed in the 2016 CBA to contribute to active police officers' HSAs in the amount of 50 percent of the deductible but did not do so for the plaintiffs. They contend that this contribution has, in effect, lowered active police officers' deductibles to $1000 for individual plans and $2000 for two person and family plans, whereas retirees are paying $2000 for individual plans and $4000 for two person and family plans.

The town contends that HSA contributions do not constitute insurance "coverages" or "deductibles" within the meaning of the 2008 pension agreement, reasoning that a deductible is a set dollar amount in an insurance policy, exclusive of the source or manner in which the amount is paid. It argues that the trial court improperly conflated the insurance plan's deductible with how the deductible is paid.[10]

---

[9] The parties also submitted into evidence a "Summary of Benefits and Coverage" document prepared by Anthem. It describes, in more detail, the coverage, deductibles, co-pays, co-insurance, and limits for the health insurance benefits offered by the town.

[10] The town also argues that the term "deductible" cannot be interpreted to include HSA contributions because (1) the 2016 CBA and the 2008 pension agreement are not separate accords but, rather, a single contract that must be read as a whole and that, when one reads the note in article 22.1 of the 2016 CBA together with the 2008 pension agreement, the unambiguous meaning of the contract as a whole is that retirees are not entitled to the HSA contributions, and (2) the parties stipulated that the 2016 CBA was the subject of this declaratory judgment action and that the 2016 CBA not only incorporated the 2008 pension agreement but also modified it, consistent with the terms of § 19 of the 2008 pension agreement.

We do not find either of these two related arguments persuasive. In its brief and at oral argument, counsel for the town acknowledged that the plaintiffs were not third-party beneficiaries of any portion of the 2016 CBA other than the 2008 pension agreement that was attached to it. Indeed, the parties expressly stipulated that all of the plaintiffs retired from their employment with the town prior to the effective date of the 2016 CBA and

353 Conn. 667        DECEMBER, 2025        679

Duso *v.* Groton

Turning to the 2008 pension agreement, we observe that the term "coverages" in § 16 (C) is not defined, though the agreement makes clear that it includes but is not limited to "deductibles, co-insurance, co-pays and/or limits . . . ." The term "deductibles" is also not defined. To determine what the town and the union intended by the use of these terms in the 2008 pension agreement, we must look to their "common, natural, and ordinary meaning[s] and usage . . . ." (Internal quotation marks omitted.) *Poole* v. *Waterbury*, supra, 266 Conn. 88. To do so, this court often consults dictionaries. See, e.g., *Garcia* v. *Hartford*, supra, 292 Conn. 345.

Black's Law Dictionary defines "coverage" as the "[i]nclusion of a risk under an insurance policy; the risks within the scope of an insurance policy." Black's Law Dictionary (9th Ed. 2009) p. 422. Another dictionary defines "coverage" in relevant part as "[i]nclusion in an insurance policy or protective plan"; "[t]he extent of protection afforded by an insurance policy." The American Heritage College Dictionary (4th Ed. 2007) p. 329. Distilled, the term "coverage" in the context of insurance describes what risks or losses the insurer agrees to bear, subject to the defined terms and limits set forth in the applicable insurance policy.

As to the term "deductible," Black's Law Dictionary defines it as (1) "[u]nder an insurance policy, the por-

under other collective bargaining agreements that had also incorporated the 2008 pension agreement. Although the 2016 CBA is important for the purpose of determining what health insurance coverages and deductibles active police officers are receiving in order to determine what coverages and deductibles the plaintiffs are entitled to under the 2008 pension agreement, the 2016 CBA is extrinsic evidence with respect to the meaning of the terms in the 2008 pension agreement; see part II B of this opinion; and, more specifically, does not inform the meaning of the terms "coverages" and "deductibles" in the 2008 pension agreement because, as we explain in this opinion, those terms, as they appear in the 2008 pension agreement, are plain and unambiguous. Second, the stipulated facts and evidence provide no support for the town's argument that the 2016 CBA, and, specifically, the note in article 22.1 of the 2016 CBA, modified the 2008 pension agreement pursuant to the contract reopening requirements in § 19 of that agreement.

Duso *v.* Groton

tion of the loss to be borne by the insured before the insurer becomes liable for payment,'' and (2) ''[t]he insurance-policy clause specifying the amount of this portion.'' Black's Law Dictionary, supra, p. 475; see also *NEMS, PLLC* v. *Harvard Pilgrim Health Care of Connecticut, Inc.*, 350 Conn. 525, 554, 325 A.3d 196 (2024) (setting forth definitions of ''deductible'' as provided in Black's Law Dictionary and General Statutes § 17b-290 (7)); 12A S. Plitt et al., Couch on Insurance (3d Ed. Rev. 2018) § 180:21, p. 180-38 (''[c]omprehensive policies, which are policies in which basic and major medical benefits are provided in a single contract, usually provide a deductible amount [that] must be paid by the insured before any benefits are payable under the policy''). The American Heritage College Dictionary similarly defines ''deductible'' as ''[a] clause in an insurance policy that exempts the insurer from paying a specified amount in the event of a claim.'' The American Heritage College Dictionary, supra, p. 369.

We must next examine what an HSA is to determine whether contributions to an HSA qualify as ''coverages'' or ''deductibles'' under the 2008 pension agreement.[11]

---

[11] We note that, before the Appellate Court, the town argued that the trial court's interpretation of the 2008 pension agreement ''contravene[d] the manner in which the federal government regulates HSAs . . . .'' (Internal quotation marks omitted.) *Duso* v. *Groton*, supra, 228 Conn. App. 419. The plaintiffs argued that the town's argument was not raised before the trial court and was based on information that was not in the record. Id. The Appellate Court agreed with the plaintiffs and declined to consider the town's argument or the nature of HSAs in its analysis. Id., 419–20. The plaintiffs make the same argument to this court. We conclude that the Appellate Court should have considered the nature of HSAs in its analysis. In order to determine whether an HSA contribution falls within the meaning of ''coverages'' or ''deductibles'' under the 2008 pension agreement, the court necessarily needed to consider what an HSA is. HSAs, as we explain in this opinion, are creatures of federal law, rendering their nature a question of law rather than a question of fact. The parties specifically flagged for the trial court the federal law governing HSAs in their stipulated facts. See 26 U.S.C. § 223 (2018). We therefore consider the nature of HSAs in addressing the question before us.

Duso *v.* Groton

An HSA is a creature of federal law. See 26 U.S.C. § 223 (2018). Born out of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003; see Pub. L. No. 108-173, § 1201, 117 Stat. 2066, 2469 (2003); HSAs are tax advantaged savings accounts created to help eligible individuals[12] pay for qualified medical expenses. See 26 U.S.C. § 223 (d) (1) and (f) (2018). Indeed, they are personally established and owned private bank accounts that participants open and maintain at banks of their choosing. See 26 U.S.C. § 223 (d) (1) (B) (2018). The funds contributed to an individual's HSA are property of that individual whether he or she changes employers or leaves the workforce altogether. See 26 U.S.C. § 223 (d) (1) (E) (2018); see also Health Savings Accounts and Other Tax-Favored Health Plans, I.R.S. Publication 969 (January 13, 2025) p. 3 ("An HSA is 'portable.' It stays with you if you change employers or leave the work force.").

A touchstone of an HSA is the tax advantages it provides. Contributions to a qualified HSA, within the prescribed contribution limits, are tax deductible; see 26 U.S.C. § 223 (a) and (b) (2018); and employer contributions are excluded from the employee's gross income. 26 U.S.C. § 106 (a) and (d) (2018). Additionally, distributions from an HSA used to pay qualified medical expenses are excluded from gross income and, thus, are tax-free for the account beneficiary. See 26 U.S.C. § 223 (f) (1) (2018).

Although HSAs are intended to help individuals pay for qualified medical expenses, distributions from an HSA can be used for any purpose. See I.R.S. Notice 2004-50, 2004-33 I.R.B. 207 (August 16, 2004) ("[T]he account beneficiary is entitled to distributions for any

_____

[12] An individual can contribute to an HSA only if he or she is covered by an HDHP and meets the other requirements of the statute. See 26 U.S.C. § 223 (c) (1) (A) through (2) (A) (2018).

Duso *v.* Groton

purpose and distributions may be used to pay or reimburse qualified medical expenses or for other nonmedical expenditures. Only the account beneficiary may determine how the HSA distributions will be used.''). The caveat to the unlimited use of funds in an HSA is that an account beneficiary who chooses to use distributed funds for anything other than qualified medical expenses will generally have those distributions taxed as gross income, and such distributions are subject to an additional 20 percent tax. See 26 U.S.C. § 223 (f) (4) (A) (2018). The penalty for using distributions for nonqualifying expenditures terminates once the beneficiary becomes Medicare-eligible at age sixty-five. See 26 U.S.C. § 223 (f) (4) (C) (2018).

With the nature of HSAs in mind, as well as the plain and unambiguous meaning of the terms ''coverages'' and ''deductibles,'' we conclude that contributions to an HSA do not constitute ''coverages'' or ''deductibles'' under the 2008 pension agreement and, therefore, do not implicate the ''nature and scope'' of insurance coverages, including deductibles, under the town's group health plan. Unlike insurance ''coverage,'' which is generally understood as the risks the insurer agrees to bear, subject to the defined terms and limits set forth in the applicable insurance policy, a contribution to an HSA is not a term of the insurance policy and does not otherwise expand, limit, or define any insured risks. Indeed, a review of the ''Summary of Benefits and Coverage'' document from Anthem that the parties entered into evidence confirms that there is no discussion of the town's HSA contributions.

Nor can it be said that a contribution to an HSA is a ''deductible.'' A deductible, as that term is commonly understood in the insurance context, is a fixed and structural part of an insurance policy that defines the threshold point at which insurance coverage begins. See, e.g., Black's Law Dictionary, supra, p. 475 (defining

Duso *v.* Groton

"deductible"). In this way, the deductible is a term of coverage—it sets the boundary line between the insured's initial financial responsibility and the insurer's obligation to pay once the deductible has been satisfied. An HSA, by contrast, is a separate funding mechanism outside of the insurance policy. See 26 U.S.C. § 223 (2018). The existence of an HSA—even if funded by an employer—does not change the deductible required by the terms of the insurance policy; nor does it satisfy the deductible by virtue of its existence or availability to the insured member of the health plan. As we explained, account beneficiaries of an HSA can use their HSA funds for whatever purpose they choose; there is no requirement that they use those funds toward satisfying their deductibles.

In concluding that an HSA contribution is a deductible, both the trial court and the Appellate Court substantially relied on the "nature and scope" language in the 2008 pension agreement that precedes the phrase "coverages, including but not limited to deductibles," not simply to broaden but, rather, to change the otherwise plain and unambiguous meaning of those terms. See *Duso* v. *Groton*, supra, 228 Conn. App. 414–16. Like the terms "coverages" and "deductibles," the phrase "nature and scope" is not defined in the 2008 pension agreement. Black's Law Dictionary defines "nature" as "[a] fundamental quality that distinguishes one thing from another; the essence of something." Black's Law Dictionary, supra, p. 1127. With respect to the term "scope," one dictionary defines it as the "extent of treatment, activity, or influence"; Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) p. 1113; and another defines it as "[t]he area covered by a given activity or subject." The American Heritage College Dictionary, supra, p. 1244.

The Appellate Court agreed with the trial court that the terms in § 16 (C) of the 2008 pension agreement

Duso *v.* Groton

were plain and unambiguous; *Duso* v. *Groton*, supra, 228 Conn. App. 414; and, in applying the dictionary definitions of "nature" and "scope," reasoned that the "essence and extent" of the deductibles applicable to retirees were effectively higher than those of active police officers because the latter received HSA contributions from the town. (Internal quotation marks omitted.) Id., 412, 416.

Although recognizing that how a deductible is funded is different from what a deductible is, the Appellate Court nevertheless applied the phrase "nature and scope" to shift the focus away from the nature and scope of the deductible itself and onto a collateral issue—how much financial assistance active police officers, as compared to retirees, had available to pay their deductibles. The nature and scope of a deductible do not vary based on the source of the payment that funds the deductible or how the insured otherwise satisfies it. A deductible, by its very nature, is a fixed dollar amount set forth in the insurance policy, independent of the resources an insured may use to satisfy it. Whether an individual pays the deductible with wages, savings, borrowed funds, or an employer funded HSA, a deductible remains the same fixed amount defined by the policy. Similarly, although the "scope" or "extent" of a deductible can vary in certain ways—for example, by the dollar amount ($500, $1000, $2000, etc.) or by exempting certain benefits (such as preventive services) from its application—it too does not vary based on the manner in which the deductible itself is funded.

The HSA contributions at issue are nothing more than an additional, optional source of funds that active police officers may use to satisfy their preexisting deductible obligations. To be sure, the 2016 CBA references the deductible in relation to the town's agreement to make HSA contributions to active police officers, and the town apparently intended its contribution to mitigate

Duso *v.* Groton

the financial impact felt by its employees as a result of the higher deductible associated with the HDHP. But the town's intention in providing the additional compensation to its employees does not change the nature or scope of the insurance deductible. The point is demonstrated by hypothesizing that the town instead had simply agreed, as part of the 2016 CBA, to pay a flat $1000 annual stipend to active police officers in recognition of rising health care costs. In that scenario, the plaintiffs would have no plausible claim to that payment under the 2008 pension agreement. The fact that the town tied the HSA contribution to the deductible amount or described it as funding the deductible does not change this analysis, particularly because the active police officers are not required to use the HSA contributions to meet their deductibles. The plaintiffs' contractual rights are limited to maintaining the same health insurance coverages and deductible levels as active police officers but do not extend to supplemental employer payments to active police officers—whether labeled stipends, allowances, or HSA contributions—merely because such payments are motivated by rising costs under the health insurance plan.

We conclude that the town acted in accordance with the terms of the 2008 pension agreement. HSA contributions to active police officers as described in the 2016 CBA do not constitute "coverages" or "deductibles" within the plain and unambiguous meaning of the 2008 pension agreement; nor does the phrase "nature and scope" otherwise change the meaning of those terms. The record indicates that the deductibles for all participants of the town's group health insurance plan, whether the participant was an active employee receiving HSA contributions or a retiree not receiving such contributions, were the same—$2000 for those insured with single person coverage and $4000 for those insured with two person or family coverage.

Duso *v.* Groton

B

Even if we were to assume arguendo that the operative language of the 2008 pension agreement is ambiguous because the plaintiffs' interpretation is also one reasonable way to interpret it, we would nevertheless resolve that ambiguity in favor of the town in light of the extrinsic evidence contained in the stipulated record.

To resolve an ambiguity in a collective bargaining agreement, a trial court typically will consider extrinsic evidence of the contracting parties' intent. See, e.g., *Poole* v. *Waterbury*, supra, 266 Conn. 97; see also *Stiegler* v. *Meriden*, 348 Conn. 452, 471, 307 A.3d 894 (2024). Courts will look to various evidence in an attempt to discern that intent, including but not limited to the "conduct of the parties," the agreement's "drafting history," and the "contracting parties' past practices and negotiations." (Internal quotation marks omitted.) *Stiegler* v. *Meriden*, supra, 471. When contractual language is ambiguous, the parties' intent is ordinarily a question of fact for the trial court, which this court would then review for clear error. See, e.g., *Murtha* v. *Hartford*, 303 Conn. 1, 12, 35 A.3d 177 (2011).

In the present case, however, the plaintiffs and the town, although advancing different interpretations, agreed that the relevant terms of the 2008 pension agreement are plain and unambiguous and could be construed as a matter of law. The parties proceeded based on a joint stipulation of facts and exhibits. Under these circumstances, in which the record before the trial court was identical to the record before this court and there was no need for the trial court to evaluate the credibility of witnesses, the legal inferences properly to be drawn from the parties' definitive stipulation of facts and exhibits raise questions of law rather than of fact. See, e.g., *Stiegler* v. *Meriden*, supra, 348 Conn. 472; *Sharper Image Corp.* v. *Miller*, 240 Conn. 531, 535,

Duso *v.* Groton

692 A.2d 774 (1997); *Morton Buildings, Inc.* v. *Bannon*, 222 Conn. 49, 53–54, 607 A.2d 424 (1992); see also 11 Williston on Contracts (4th Ed. May, 2025 Update) § 30:7 ("if a contract is ambiguous, its interpretation is a question of law for the court as long as the extrinsic evidence bearing on the interpretation is undisputed").

In proceeding under the assumption that the 2008 pension agreement language is ambiguous as to whether the plaintiffs are entitled to HSA contributions from the town, we must, on this stipulated record, seek to discern what the contracting parties—the town and the union—intended by the language in § 16 (C) of the 2008 pension agreement. Two documents are particularly relevant to this inquiry: the 2016 CBA and the collective bargaining agreement between the town and the union for the period July 1, 2020, through June 30, 2023 (2020 CBA). Like the collective bargaining agreements under which the plaintiffs retired, both of these agreements incorporate the 2008 pension agreement. Accordingly, the 2016 and 2020 CBAs—each negotiated between the town and the union—are probative of the contracting parties' shared understanding of the operative language in the 2008 pension agreement, which was itself a product of their collective bargaining and which the parties to this action stipulated remained in effect as of October 19, 2022, the date on which they submitted the joint stipulation of facts to the trial court. See *Paper, Allied-Industrial Chemical & Energy Workers International Union, Local 8-192, AFL-CIO* v. *TXI Riverside Cement Co.*, 244 Fed. Appx. 116, 118 (9th Cir.) (in interpreting ambiguous language, trier of fact may "consider the parties' conduct subsequent to contract formation" and "the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements" (internal quotation marks omitted)), cert. denied, 552 U.S. 1023, 128 S. Ct. 628, 169 L. Ed. 2d 395 (2007); see also F. Elkouri & E. Elkouri, How

Duso *v.* Groton

Arbitration Works (6th Ed. 2003) c. 9.3.A.ii, pp. 453–54 (evidence of "subsequent negotiations" may aid in interpretation of ambiguous provisions).

Each of those agreements contains a "note" in article 22.1 (the employee group insurance provision), which expressly addresses the town's HSA contributions to active police officers. Each note provides in relevant part: "The Town's fifty percent (50%) contribution toward the funding of the HDHP plan is not an element of the underlying insurance plan, but rather relates to the manner in which the deductible shall be funded for active employees. The Town shall have no obligation to fund any portion of the HDHP deductible for retirees or other individuals upon their separation from employment." (Emphasis omitted.)

The language in each note unmistakably reflects the contracting parties' intent that the HSA contribution is not "an element of the underlying insurance plan" and that the town "shall have no obligation to fund any portion of the HDHP deductible for retirees . . . ." (Emphasis omitted.) The note, therefore, resolves any ambiguity about whether the town and the union intended for an HSA contribution to constitute either a coverage or a deductible within the meaning of § 16 (C) of the 2008 pension agreement. The 2016 and 2020 CBAs confirm that the contracting parties understood the town's HSA contributions solely as a mechanism through which active employees could fund their deductibles, not the nature or scope of "coverages" or "deductibles" available to retirees under the 2008 pension agreement. Importantly, nothing in the stipulated record suggests that the note in the 2016 or 2020 CBAs modified the 2008 pension agreement in any way. Rather, the stipulated record reflects that the 2008 pension agreement was incorporated into the 2016 and 2020 CBA without modification and, therefore, remained the same agreement that was incorporated into the CBAs

Duso *v.* Groton

under which each plaintiff retired. The plaintiffs acknowledge that there is no support in the joint stipulation of facts that the note in article 22.1 of the 2016 or 2020 CBA modified the 2008 pension agreement.

Accordingly, we conclude that the most reasonable reading of the phrase "nature and scope of coverages, including . . . deductibles" in § 16 (C) of the 2008 pension agreement is that it does not encompass the source from which a deductible is funded and, therefore, that the plaintiffs are not entitled under that provision to the HSA contributions that active police officers receive from the town. To conclude otherwise would lead to the irrational result that the same pension agreement would be interpreted differently depending on the collective bargaining agreement into which it was incorporated. Indeed, under the plaintiffs' interpretation, retirees like the plaintiffs who left employment under earlier CBAs would receive an additional benefit—town-funded HSA contributions—that was expressly denied to all later retirees, even though all are covered by the same exact pension agreement that remained in effect when the parties submitted their joint stipulation of facts to the trial court. Thus, even if we assume that the operative language of the 2008 pension agreement is ambiguous, the town's interpretation of the relevant phrase is the more reasonable one.[13]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the trial court's judgment and remand the case to the trial court with direction to render judgment for the town.

In this opinion McDONALD, ECKER and ELGO, Js., concurred.

[13] In light of our disposition on the first certified question and determination that the plaintiffs are not entitled to the HSA contributions, we need not decide the second certified question regarding the propriety of the trial court's damages award.

Duso *v.* Groton

D'AURIA, J., dissenting. I disagree with the majority of this court and would affirm the judgment of the Appellate Court because I agree in large part with the reasoning of both that court and the trial court. However, unlike those courts and the majority of this court, I conclude that the language of § 16 of the parties' 2008 pension agreement, to which the plaintiffs[1] are third-party beneficiaries, is ambiguous because the language of that provision is susceptible to more than one reasonable interpretation. See, e.g., *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 671, 791 A.2d 546 (2002).

The majority concludes that the language is unambiguous in a way that favors the defendant while the Appellate Court and the trial court conclude that the language is unambiguous in a way that favors the plaintiffs. It is true that these competing views of clarity do not prove ambiguity. But, in my view, a proper construction of § 16 of the 2008 pension agreement should result in a conclusion that the terms are ambiguous. Although the majority's interpretation is a reasonable one, I conclude that the plaintiffs' construction of that agreement is more reasonable.

In particular, in § 16 of the 2008 pension agreement, the defendant, and the plaintiffs' union, defined the scope of the health insurance coverages to which retired police officers are entitled as the same "nature and scope of coverages, including but not limited to deductibles, co-insurance, co-pays and/or limits," as those in effect for active officers. The parties later negotiated their 2016 collective bargaining agreement (CBA), which expressly incorporated the 2008 pension agreement by reference and provided that the defendant would fund 50

_____

[1] The plaintiffs, Donna Duso, David Menard, James Gauthier, Kathleen Doyle and Dexter Herron, are retired police officers of the defendant, the town of Groton.

Duso *v.* Groton

percent of active officers' annual in-network deductible via a contribution to their health savings accounts (HSA).

A contract must be construed to effectuate the intent of the parties, which is determined by the language used in the contract, interpreted in the context of the circumstances associated with the transaction. See, e.g., *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 498, 746 A.2d 1277 (2000). When contracting parties define the terms they employ, the court should give effect to the parties' chosen language. See, e.g., *Keller* v. *Beckenstein*, 305 Conn. 523, 536, 46 A.3d 102 (2012) ("when a statutory definition applies to a statutory term, the courts must apply that definition" (internal quotation marks omitted)); *Stiegler* v. *Meriden*, 348 Conn. 452 472 n.12, 307 A.3d 894 (2024) (pension plan incorporated by reference into collective bargaining agreement is part of operative contract, which should be construed consistently with statutory construction principles).

Regardless of the dictionary definitions or common usage of terms like "coverage," "deductible," "co-pay," or HSA contributions, the defendant and the union chose to define the "nature and scope" of the health insurance "coverages" that retired officers are entitled to broadly in the 2008 pension agreement, expressly using "deductibles" and "co-pays" as examples. The parties also explicitly chose to link the defendant's annual contribution to active employees' HSAs to the payment of their deductibles. Although it recognizes that the defendant intended the HSA contributions to mitigate the financial impact of the new high deductible health insurance plan, the majority concludes that the nature and scope of the retirees' health insurance coverage remains unchanged because, *if* the defendant had simply agreed to pay the active officers a flat annual stipend, the plaintiffs would have no plausible claim to payment under the 2008 pension agreement. This is true, but, as the Appellate Court pointed out; see *Duso* v. *Groton*, 228 Conn. App. 390, 415, 325 A.3d 295 (2024);

this hypothetical is not implicated because, for whatever reason, that is not how the contracting parties chose to mitigate the impact of the high deductible health insurance plan. Rather, the question before us is whether the operative language of the CBA contravened the 2008 pension agreement. Because the defendant and the union chose to define the health insurance coverage the plaintiffs are entitled to broadly, and chose to closely associate the HSA contributions with the term "deductible," I agree with the Appellate Court that the defendant cannot avoid its obligation to provide the same coverage to retired employees by giving active employees targeted dollars to pay their deductibles, just as they could not provide active employees a reduced deductible.

I otherwise agree with the reasoning of the Appellate Court and would affirm its judgment.